# SUPREME COURT.

MARY S. BRADLEY agt. THEODORE W. DWIGHT, THE PRESI-
DENT AND FELLOWS OF YALE COLLEGE, WILLIAM STEIN-
WAY, THE NEW YORK MEDICAL COLLEGE AND HOSPITAL
FOR WOMEN *et al.*

*The law of escheat — Complaint — Demurrer — Claims against equity.*

An allegation in a complaint that B. died seized of lands, intestate,
unmarried and without issue, leaving him surviving a *father*, an alien,
who died intestate and without living descendants, whereby the land
escheated, is not, *on demurrer*, a sufficient allegation to make it affirma-
tively appear that the father died without heirs having legal capacity to
take.

It is the settled law of this state that descent between brother and sister is
*immediate*, notwithstanding the *alienage* of the parent, and, therefore,
the allegation in the complaint that the lands escheated was an unau-
thorized conclusion.

B., being seized of lands in fee, mortgaged them to C. The lands were
afterwards conveyed to D., who died unmarried, intestate and without
issue, leaving him surviving a father, an alien, who also died intestate
without leaving descendants. Afterwards, in 1843, the mortgage was
foreclosed in chancery, but the state to whom it was alleged the lands
had escheated were not made a party. The legislature released the
property to the plaintiff, who brings suit to redeem against the holders
under foreclosure, who have been in undisputed possession for thirty-
eight years. No notice of the application to the legislature was given
the defendants as required by Laws of 1829, chapter 259:

*Held,* that the plaintiff shows no ground of equitable relief. A court of
equity should not lend its aid in furtherance of such a claim.

*Special Term, December,* 1881.

*Theodore W. Dwight, George W. Cotterill* and *Everitt P.
Wheeler,* for demurrants.

*Ralph T. Woods,* opposed.

LARREMORE, *J.* — It appears by the complaint that on
January 26, 1828, Abraham Bell, who was seized in fee of

the premises in dispute, mortgaged the same to " The New York Contributionship for the insurance of houses and property from loss by fire," as security for the payment of $6,000 on December 1, 1830.

By several *mesne* conveyances the title of the premises vested in Richard Byrd, April 30, 1828, subject to said mortgage, who, it is alleged, died seized thereof, unmarried, intestate and without issue, leaving him surviving his father Joseph Byrd, who was an alien, and died May 10, 1838, intestate, and without living descendants, whereby the land escheated to the people of the state of New York. The mortgage of January 26, 1828, was foreclosed, and in pursuance of a decree of the court of chancery the premises were sold and conveyed to Morris Ketchum, July 8, 1843, for the sum of $7,000, who entered into and has continued in possession thereof by himself and his assigns — the defendants — until the commencement of this action.

It is further alleged that the people of the state of New York were not a party to the foreclosure suit and their right of redemption has not been barred, but that the same, by certain acts of the legislature, has been released and is now vested in the plaintiff, who brings suit to redeem the premises from the lien of the mortgage, upon an offer to pay any sum due thereon after deduction of the rents, gains and profits realized therefrom.

To this claim the defendants severally demur and insist that no just cause of action is shown.

By the law of this state all lands are declared to be allodial, subject only to the liability to escheat. All feudal tenures of every description are abolished, and the entire and absolute property in lands is vested in the owners according to the nature of their respective estates (*State Constitution, art.* 1, *secs.* 11, 12 *and* 13). By the force of constitutional law, legislative enactment and the jurisprudence of the state, escheat — a remnant of the feudal tenure — depends upon defect of heirs as the essence of its support.

Bradley agt. Dwight.

The gravamen of the complaint is, that Richard Byrd, who was seized of the premises in dispute, died March 25, 1837, unmarried, intestate and without issue, leaving him surviving his father, Joseph Byrd, who was an alien, and died intestate and without living descendants, and that thereby the property escheated to the people of the state of New York.

At common law a parent could not inherit from a child (*McLean* agt. *Swanton*, 13 *N. Y.*, 542). The enabling statutes in this respect (*Laws* 1786, *chap.* 12; *R. S.* [5 *Edm.*], 702–3) were in derogation of the common law. The statute provides that if either parent be incapable of inheriting, then the lands shall descend to the remotest possible heir.

It is settled by judicial authority that the descent between brother and sister is immediate, notwithstanding the alienage of a parent (*Lulus* agt. *Eimer*, 15 *Hun*, 400; 80 *N. Y.*, 179; *Jackson* agt. *Green*, 7 *Wend.*, 337). Therefore the allegation in the complaint that the lands escheated was an unauthorized conclusion.

The spirit and policy of our law does not favor an extension of the doctrine of escheat. This is manifested by repeated enactments (*Laws* 1868, *chap.* 513; *Laws* 1872, *chap.* 141; *Laws* 1877, *chap.* 111), that the title of a citizen of this state in actual possession of lands shall not be questioned or impeached by reason of the alienage of any person from or through whom such title may have been derived. By these acts the rights of the state in any case in which proceedings for an escheat have been instituted, as well as the rights of devisees, mortgagees and creditors, are saved and excepted.

In *Jackson* agt. *Adams*, (7 *Wend.*, 367), a well considered distinction is shown between a citizen and an alien dying without heirs. In the former case it is decided that the state had no right of entry or possession of his lands until office found.

The mortgage of January 26, 1828, was a valid and unquestioned lien, and the decree of foreclosure thereupon, entered June 23, 1843, authorized a sale of the premises upon which

the purchasers thereof have remained in undisturbed and undisputed possession for thirty-eight years. Until the present suit, they have had neither actual nor constructive notice of any adverse claim, and if one may not "sleep upon such title," then all legal provisions to that effect are inadequate and ineffectual.

No notice was given of the application to the legislature for a release of the property in question (*Laws* 1829, *chap.* 259), and the defendants, who are *bona fide* purchasers thereof, are sought to be charged with a forfeiture of their rights therein in favor of a claimant who shows no ground for equitable relief. A court of equity should not lend its aid in furtherance of such a claim. The defendants, as representatives of the mortgagor, could at least hold the title against all claimants, except the state, and against it, until the escheat is established by judicial proceedings ( *Wright* agt. *Saddler*, 20 *N. Y.*, 324).

The demurrer should be sustained — first, because it does not affirmatively appear that Richard Byrd died without heirs having legal capacity to take; second, that as against these defendants, the plaintiff has not acquired a legal or valid title to the property.

The conclusion dispenses with the consideration of the other points raised upon the argument.

There should be judgment for the defendants on the demurrer without prejudice to the plaintiff, if so advised, to make special application for an amendment of her complaint.