(117 App. Div. 401)

## SEITZ v. MESSERSCHMITT et al.

(Supreme Court, Appellate Division, First Department. February 8, 1907.)

1. ESCHEAT—MORTGAGED PROPERTY—EVIDENCE—FINDINGS.

Evidence *held* to justify a finding that the mortgagor and owner of the equity of redemption in the property in controversy died without heirs capable of inheriting, and that at his death the title to the property vested by escheat in the state.

2. STATES—ACTIONS AGAINST—RIGHT TO SUE—CONSENT.

A sovereign state could not be sued in its own courts without its consent in a suit to foreclose a mortgage on land, the title to which it had acquired by escheat.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, States, §§ 179–184.]

3. SAME—PARTIES.

Where the courts of the state could acquire no jurisdiction over the state without its consent as a party to a suit to foreclose a mortgage on land the equity of redemption in which had escheated, the making of the Attorney General of the state a party in his representative capacity, and his appearance and demand for any surplus arising on the sale of the property, did not authorize the court to foreclose the state's interest in the property under a judgment of foreclosure.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, States, §§ 179–184, 196.]

Laughlin, J., dissenting.

Appeal from Special Term, New York County.

Action by Anna Seitz against Magdalena Messerschmitt and others. From an order allowing the motion of defendant Messerschmitt to be relieved from her purchase of certain land on a sale pursuant to an interlocutory judgment in partition proceedings, on the ground that the property was not marketable, plaintiff appeals. Affirmed.

Argued before INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

George Q. Collins, for appellant and for infant defendants.
Joseph T. Weed, for respondent.

INGRAHAM, J. The questions presented on this appeal are stated in the opinion of Mr. Justice LAUGHLIN. There is one ground upon which I do not agree with him. The conveyance of the referee on the sale under the judgment in the foreclosure action is the foundation of the title. In that action no defendant, as representing the heirs at law of the mortgagor, was made a party; it being alleged that the mortgagor died owning the equity of redemption in the property without heirs at law, which it may be assumed meant without heirs at law capable of inheriting real property in this state. The title is sought to be sustained upon that theory. If, however, the owner of the equity redemption died without heirs at law capable of inheriting the title to his real property, it escheated to the state, who therefore became the owner of the property in question subject to the mortgage.

I agree with Mr. Justice LAUGHLIN that the facts would justify a finding that the mortgagor and owner of the equity of redemption died without heirs at law capable of inheriting, and that therefore at his death the title to the property vested by escheat in the state. The

question, then, is whether the title of the state was affected by the sale under the judgment of foreclosure. The people of the state were not a party to the foreclosure action, and it always has been a settled rule of law that a sovereign state could not be sued in its own courts without its consent. This question is discussed by Mr. Justice Mitchell in Kiersted v. People, 1 Abb. Prac. 385, and the rule as I understand it is there stated. He quotes from Bronson, C. J., in Delafield v. State of Illinois, 2 Hill, 159, that, "when a state is made defendant, the state courts cannot exercise jurisdiction." It seems to me clear that, if the courts of the state could acquire no jurisdiction as against the state to affect its title to real property, making the Attorney General of the state a party defendant in actions affecting real property could give the court no jurisdiction to sell the property of the state under a judgment in that action. Upon the assumption that the property escheated to the state, the state became the owner of the equity of redemption, and to sustain the title offered to the purchaser we must hold that the deed by the referee under the judgment of foreclosure conveyed the equity of redemption which had become vested in the state. If the court had no jurisdiction over the state, in whom the title to the property had vested, it certainly could not sell the interest of the state in the property under a judgment in an action to which the state was not a party (Code Civ. Proc., § 1632); and, as the statute of limitation has not run against the state, I do not see how we can say that the interest of the state has been divested by the sale under this judgment.

The cases in which courts of equity have allowed a state, or the Attorney General of a state, to be made a party defendant, have been cases in which there had been an apparent lien upon real or personal property which apparently was owned by the state, and the Attorney General was made a party, not for the purpose of affecting the rights of the state, but to notify him of the existence of the controversy, so as to give him an opportunity to appear and protect the interests of the state, if he so desired. But in no case that I can find has it ever been held that where real property had vested in a state, making either the state or the Attorney General a party to an action affecting such real property, without legislative sanction, could divest the state of the property that had vested in it. While the Attorney General was the legal officer of the state, he had no power to divest the state of real property; that power vesting solely with the Legislature. Making him a party did not bind him to interpose on behalf of the state, and upon principle I cannot see how it can be said that making him a party to the action and his appearance in the action could vest the court with jurisdiction to sell the property of the state, so as to divest it of title. I do not think we can declare in this action, to which the state is not a party, that the title of the state to this property has been divested by the sale under the foreclosure suit, and therefore I think the title is not marketable.

The order should therefore be affirmed, with $10 costs and disbursements.

CLARKE and SCOTT, JJ., concur.

LAUGHLIN, J. (dissenting). The premises in question are known as "Nos. 657 and 659 East 151st Street," borough of the Bronx, city of New York, and consist of a parcel 50 feet in width, by 114 feet in depth, on the northerly side of the street, commencing 20 feet easterly from Melrose avenue. In 1860 the easterly 25 feet were owned in fee simple absolute by William Bower, who, on the 21st day of March, that year, duly mortgaged the same; his wife joining in the mortgage. The mortgage by mesne assignments came to one Herbert J. McDonald, who in the month of November, 1871, brought an action in the Supreme Court, Westchester county, to foreclose the same. The mortgagor had died in the meantime, but his widow, who had joined in the mortgage, was living. She was made a party defendant, and both summons and complaint were personally served upon her, but she defaulted in appearing. The only other defendant was "Marshall B. Champlain, Attorney General of the state of New York, in behalf of the people of the state of New York." It was alleged in the complaint that the mortgagor had died "leaving his widow and no heirs at law and next of kin, and by reason whereof Marshall B. Champlain, as Attorney General of the state of New York, in behalf of the people of the state of New York, have or claim to have some interest in or lien upon the said mortgaged premises." Champlain, as a party defendant, by the description contained in the title, served the usual notice of appearance, which he subscribed, "M. B. Champlain, Attorney General, for the People of the State of New York," and therein waived notice of all proceedings, except notice of application for surplus moneys. Upon proof of service upon the defendant Bower and this notice of appearance, the usual steps and proceedings in a foreclosure action were taken and had, and judgment of foreclosure was entered, under which the property was sold by the sheriff to the defendant Bower, the widow of the mortgagor, and a conveyance thereof executed to her by him on the 14th day of February, 1872. The premises were struck off to her on her bid, which just equaled the amount of the indebtedness and the costs and expenses of the action, and, as there was no surplus, no surplus money proceedings were had. By mesne conveyances from the purchaser at foreclosure sale the property became vested in one Joseph Messerschmitt in or prior to 1880. It does not expressly appear whether or not the purchaser at the foreclosure went into possession at once. The plaintiff is the daughter of said Messerschmitt by his first wife, and the defendant, the purchaser here, his second wife. They derived the title which it was sought to partition in this action, and which has been sold, through him.

It is evident that this was a friendly application to determine the marketability of the title, because the widow, who is the purchaser, as well as plaintiff, her stepdaughter, presents an affidavit showing her knowledge concerning the possession and title of her husband. It appears by their affidavits that Messerschmitt was in possession as early as 1880; that the premises were then inclosed by a substantial inclosure, and about 5 years thereafter he built two apartment houses thereon, which covered the entire frontage, and that that part of the premises not covered by the buildings remained inclosed by a substantial inclosure until after his death in 1894, or during a period of about

25 years; that during this entire period no claim adverse or hostile to the ownership or title of said Messerschmitt was made by any person or persons to their knowledge; and that they never learned from him that such claim was ever made. The defects in the title claimed by the purchaser were that the equity of redemption, which was in the heirs of the mortgagor or the people of the state, was not foreclosed, owing to the failure of the plaintiff to make unknown heirs of the mortgagor (subdivision 6, § 135, Code of Procedure, as amended by section 4, c. 459, p. 784, Laws 1860), or the people of the state, parties defendant.

The purchaser, in claiming that the heirs of the mortgagor should have been made parties defendant, relies upon the rule that it is presumed that no man dies without heirs. 22 Am. & Eng. Encyclopædia (2d Ed.) 1291, and cases cited; Ettenheimer v. Heffernan, 66 Barb. 374; Bradley v. Dwight, 62 How. Prac. 300; Pitkin v. N. Y. & N. E. Ry., 64 Conn. 482, 30 Atl. 772; Harvey v. Thornton, 14 Ill. 217; Lawson's Law of Presumptive Ev. 249; Bell v. Hall, 76 Ala. 546; John v. Hunt, 1 Blackf. (Ind.) 324, 12 Am. Dec. 245. The appellant, however, contends that such presumption is overcome by the allegations of the complaint in the foreclosure action, which are not controverted, and therefore stand as if determined by the court upon the trial of an issue. If it had been alleged that he left only one heir, who was made a defendant and defaulted, surely it would not be necessary to prove the allegations by calling witnesses, and the burden would be on the purchaser of showing other heirs. It would seem, unless it is impossible that a person could die without heirs at law capable of inheriting his realty, that this allegation of the fact would be controlling, at least in the absence of some evidence of the existence of heirs. It is manifest that there may have been blood relations, and yet not heirs at law capable of inheriting the land. The allegations of the complaint should be construed as meaning that he left no heir capable of inheriting; for that is the sense in which the term is used in the complaint, and it is strictly its legal meaning. Tillman v. Davis, 95 N. Y. 17, 47 Am. Rep. 1. In 1871 alien heirs were incapable of inheriting real property in this state. Luhrs v. Eimer, 80 N. Y. 171–178. Moreover, the presumption that no one dies without leaving heirs capable of inheriting his real property cannot be conclusive; for he may, and that the state shall then take by escheat, the Constitution expressly contemplates. Article 1, § 11. It is evident that there is no hard and fast rule on the point, and that it is possible that one may die without heirs capable of inheriting, and that circumstantial evidence, or great lapse of time, may be sufficient to overcome the presumption that he did not. In the second edition of the Am. & Eng. Encyclopædia of Law (page 1291), the law on this subject is stated as follows:

"Owing to the recognized fact that comparatively few persons die without heirs, either near or remote, it is presumed that decedents leave heirs. But the nonexistence of heirs within a particular degree may be established by circumstantial evidence, and after a great lapse of time and the nonappearance of heirs their nonexistence may be presumed."

In Harvey v. Thornton, supra, which was a foreclosure action in which the decree was taken by default, the mortgagor's administrator was made a party defendant, but his heirs were not joined in any form, and there was no allegation that there were not heirs. The court held that there was a presumption that heirs existed capable of inheriting, but the court said:

"It may perhaps be that, if the bill had contained an allegation that the mortgagor had died without heirs, the decree might be sustained. But, in the absence of such averment, it is clearly the duty of this court to intend that there are persons in existence who inherited the equity of redemption."

In Moran v. Conoma, 59 N. Y. Super. Ct. 101, 13 N. Y. Supp. 625, affirmed 128 N. Y. 591, 28 N. E. 251, objection was made to a title by the purchaser on foreclosure, upon the ground that proof should have been offered as to persons described in the summons as unknown absentees and heirs at law of the mortgagor, to show who such unknown persons and absentees were, or to show that the mortgagor did in fact die without heirs. It appeared that he left the city of New York shortly after giving the mortgage and had not been heard from for upwards of 35 years. It was held that the objection was not sufficient to release the purchaser; the court following Wheeler v. Scully, 50 N. Y. 667, where the mortgagor, after executing the mortgage in 1853, left home and had not been heard from at the time of the foreclosure in 1871 and 1872. He was served by publication, and his unknown heirs were made parties defendant. The objection raised to the title was that it was to be presumed that the mortgagor was dead and he left heirs at law, who might be infants, who would not be barred by the judgment. It was held that, even if the service would not have been good against infants, if the mortgagor had died leaving infant heirs, yet the burden of showing infancy rested upon the purchaser.

In Bradley v. Dwight, 62 How. Prac. 300, which was an action to redeem, the plaintiff claimed through the people by release from the Legislature of their title by escheat. The defendant claimed title under foreclosure, wherein it was alleged that the owner of the equity of redemption died seised of the premises, intestate, unmarried, and without issue, leaving him surviving, a father, an alien, who also died without issue. People of the state were not made a party defendant, either directly or indirectly. The defendant and his grantees had been in possession under the deed in foreclosure. A demurrer to the complaint was sustained upon the ground that it did not affirmatively appear that the owner died without heirs having legal capacity to take, as he might have had brothers or sisters. But, inasmuch as there was no allegation in the complaint in foreclosure in that case that the owner of the equity of redemption died without heirs, it is not an authority on the point now under consideration.

It appears to me that there is no defect in this title disclosed on the face of the record, and that it is incumbent on the purchaser to show that there were heirs. See Greenblatt v. Hermann, 144 N. Y. 13, 38 N. E. 966; Wheeler v. Scully et al., 50 N. Y. 667; Moran v. Conoma, 59 N. Y. Super. Ct. 101, 13 N. Y. Supp. 625, affirmed 102 N. Y. 591, 28 N. E. 251; Hagan v. Drucker, 90 App. Div. 28, 85 N. Y. Supp.

601; Lenehan v. College of St. Francis Xavier, 51 App. Div. 535, 64 N. Y. Supp. 868; Goodwin v. Crooks, 33 Misc. Rep. 39, 68 N. Y. Supp. 219, affirmed 58 App. Div. 465, 69 N. Y. Supp. 578; Matter of Sullivan, 51 Hun, 378, 4 N. Y. Supp. 59; Barson v. Mulligan, 66 App. Div. 493, 73 N. Y. Supp. 262. The judgment in partition under which the premises have been sold establishes presumptively that the title offered for sale is in the parties to the action, of which the purchaser is one. Goodwin v. Crooks, 33 Misc. Rep. 39, 68 N. Y. Supp. 219; Id., 58 App. Div. 464, 69 N. Y. Supp. 578. In view of the fact that the widow of the mortgagor was made a party defendant, and the complaint, containing the allegation that her husband died without heirs, was served upon her, it is reasonable to infer that the allegation in the complaint was in accordance with the facts, especially as it was assumed that title has escheated to the state and the Attorney General was made a party. In those circumstances there was no likelihood of collusion.

Moreover, I am of opinion that upon this branch of the case the title is good by lapse of time. It is to be borne in mind that the only right in the mortgagor or in his heirs, if he left any, was a right of redemption after the mortgagee, or those who became subrogated to his rights under the mortgage by the judgment in foreclosure, came into possession of the premises. Lunny v. McClellan (App. Div. 1st Dept., Dec. 1906) 101 N. Y. Supp. 812. The statute of limitations against such an action is ten years after possession is taken by the mortgagee or his successor in interest. Hubbell v. Sibley, 50 N. Y. 468. It is likely that the purchaser went into possession immediately, but in any event it appears that the father of the plaintiff and husband of the purchaser was in undisturbed possession by virtue of the title derived from the foreclosure of the mortgage for a period of about 25 years. If any heirs were living, the statute would have been against them, whether adults or infants. It is a reasonable inference that the purchaser on the foreclosure took possession of the premises, for we find his successor in interest in possession in 1880. If the heirs were of age at the time the purchaser under the decree in foreclosure went into possession, the statute of limitations commenced to run at once, and would not be suspended by a subsequent devolution of title to infants. Jackson v. Robins, 15 Johns. 169; Ottinger v. Strasburger, 33 Hun, 466, affirmed 102 N. Y. 692; Fleming v. Griswold, 3 Hill, 85; Swearingen v. Robertson, 39 Wis. 462; Becker v. Van Valkenburgh, 29 Barb. 319. If the heir was then an infant just born, the running of the statute of limitations would be complete after the lapse of 31 years. There may be no presumption that the heirs were adults, but there is a presumption that they were not insane or under other disability, which is not a normal condition. There is little hardship in this particular case in giving weight to the defense of the statute of limitations against an action to redeem, in view of the fact that the purchaser is personally familiar with the facts relating to possession for a period of more than 25 years, as are the other parties to the action, some of whom, at least, would be available as witnesses. According to the allegations of the complaint in the foreclosure action, the title had escheated to the people of the state. If

the owner of the equity of redemption died, as is alleged, without heirs, then his title and interest escheated to the state without any action on the part of the people or their representatives. Johnston v. Spicer, 107 N. Y. 185, 13 N. E. 753; article 1, § 11, Const. 1846; Ettenheimer v. Heffernan, supra.

It is claimed that the people should have been made a party eo nomine. Our attention, however, has not been called to any statute authorizing the plaintiff in a foreclosure action to make the people of the state a party defendant as the owner of the equity of redemption, and, of course, in the absence of such a statute, the rule is that the people, being the sovereign, may not be sued. It was provided by statute at that time that the people might be made a party to an action in partition of lands held by the people and by individuals as tenants in common (sections 108, 109, tit. 3, c. 5, pt. 3, 3 Rev. St. [6th Ed.] p. 597), and is now so provided in the Code of Civil Procedure (section 1594); but, in view of the rule prohibiting an action against the sovereign, that would not justify making the people a party to a foreclosure action. In case of intestacy, unless it appeared that the deceased left next of kin, the statute at that time required that a citation should be issued to the Attorney General, who in case of escheat appeared for the people. Section 37, tit. 2, c. 6, pt. 2, 2 Rev. St. [1st Ed.], p. 76; Gorabault v. Public Adm'r, 4 Bradf. Sur. 226. Section 2616 of the Code of Civil Procedure provides for issuing a citation to the Attorney General, and not directly to the people, in cases of probate of wills relating to real estate, where the heirs of the decedent cannot be ascertained. By amendment to section 1627 of the Code of Civil Procedure by chapter 528, p. 1080, of the Laws of 1899, authority now exists for joining the people as a party in foreclosure, where they have a subordinate lien, by serving the Attorney General. If the people could have been lawfully joined as a party defendant, I am of opinion that, since service might have been made on the Attorney General, who alone could have appeared for them, what was done, in view of his appearance for the people without questioning the procedure, should be regarded as a sufficient designation of the people as a party defendant, and sufficient service, or, at least, the appearance should be deemed, presumptively at least, a voluntary appearance for the people, in whose behalf he assumed to appear, and a waiver of any irregularity or defect in the title in the summons. See People v. Hydrostatic Paper Co. et al., 88 N. Y. 623; Sperry et al. v. Reynolds, 65 N. Y. 179; Brown v. Nichols, 42 N. Y. 26. See rule 11, Supreme Court Rules 1858, in force at that time.

The Attorney General had no interest in the suit, except in his official capacity as representing the people. Since the people had not consented to be made a party defendant in such a case, the mortgagee, whose rights accrued before the state acquired an interest, would be deprived of his right to foreclose the mortgage and to have the judgment pass good title, as against the people, whose rights were subordinate to those of the plaintiff, unless the court of equity devised some plan for giving the people notice and an opportunity, not to litigate their title, but to come in and protect it by redeeming or bidding. It appears that a practice was devised by which, where the people had or claimed a lien on

premises subsequent or subordinate to the rights of the plaintiff, and in other suits in equity where they were interested, they were given notice by naming the Attorney General, in his official capacity, as a party defendant, and serving process upon him. Varick v. Smith, 5 Paige, 137; Carr v. Bright, 1 Barb. Ch. 157; Kiersted v. People, 1 Abb. Prac. 385. On principle that rule should be applied to a case where the people had become the owners of the equity of redemption.

I am of opinion, therefore, that the title was marketable. I think it falls within the cases holding that where it is possible that a fact exists which would affect the title, but that it is extremely improbable and a remote contingency, the court may compel a specific performance. Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387; Hagan v. Drucker, 90 App. Div. 28, 85 N. Y. Supp. 601; Lenehan v. College, etc., supra; Cambrelling v. Purton, 125 N. Y. 610, 26 N. E. 907; Hamberschlag v. Duryes, 58 App. Div. 288, 68 N. Y. Supp. 1061, affirmed 172 N. Y. 622, 65 N. E. 1117; Empire Realty Co. v. Sayre, 107 App. Div. 415, 95 N. Y. Supp. 371.

It follows that the order should be reversed, with $10 costs and disbursements, and motion granted, with $10 costs.