THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* HORACE S. TUTHILL and SHEFFIELD FARMS-SLAWSON-DECKER COMPANY, Being the Occupants of the Property Formed by the Intersection of Brook Avenue and Melrose Avenue, Borough and County of Bronx, etc., and All Other Unknown Claimants, etc., Respondents.

First Department, March 9, 1917.

Ejectment — escheat — evidence — declarations of deceased owner — proof sufficient to establish escheat — when witnesses not interested — burden of proof in ejectment where defendant claims no title.

Action in ejectment brought to recover lands to which the State claims title by escheat. The defendant, a corporation, is in possession of the property, but shows no claim of title whatever, while another defendant

claims under an assignment of a tax lien. It appeared that the last owner, who came from a foreign country, died intestate when over ninety years of age; that he never had a child, and that a wife who survived him subsequently died.

*Held*, that it was error for the trial court to refuse to consider, on the question as to whether the deceased had left collateral heirs, the testimony of a nephew and niece of the decedent's wife to the effect that the decedent had repeatedly told them eleven years prior to his death that he had no brothers or sisters, or other living relatives. Said declarations of the decedent are competent proof to establish an escheat to the State, and as the nephew and niece made no claim to be of the blood of the decedent, their testimony should not be rejected because of some supposed interest on their part.

While as a general rule a plaintiff in ejectment must recover upon the strength of his own title, and not on the weakness of that of his adversary, the rule holds where title is asserted against title and not to a case where the defendant claims no title, but merely objects that the plaintiff has not proved a perfect title against those who might claim adversely.

PAGE and SMITH, JJ., dissented, with opinion.

APPEAL by the plaintiff, The People of the State of New York, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Bronx on the 26th day of June, 1916, dismissing the complaint upon the decision of the court after a trial at the Bronx Special Term.

*F. H. La Guardia,* for the appellant.

*George W. Alger,* for the respondents.

SCOTT, J.:

This is an action in ejectment to recover possession of a parcel of land between Melrose avenue and another avenue in the county of Bronx. The State claims title by escheat from one James Wells who died at the city of New York on or about the 10th day of June, 1879. The corporation defendant is in possession of the property, or a portion of it but exhibits no claim of title thereto. The defendant Tuthill holds an assignment of a tax lien upon the property from the city of New York.

Since the court merely dismissed the complaint for lack of evidence of plaintiff's title, no decision or findings of fact

were filed. The court filed an opinion, however, indicating what facts had been satisfactorily proven, and wherein, as it was considered, the proof had failed.

The facts shown to the satisfaction of the court and abundantly proven by the evidence were that James Wells, who died in the city of New York on or about June 10, 1879, was the person of that name who was the grantee of the premises in suit from Gouverneur Morris by a deed dated May 10, 1861; that he died seized of the premises ; that he was about ninety-two years old at the time of his death and died intestate; that he left him surviving a wife, who died March 19, 1883, and that he never had a child. It also appeared in evidence that Wells originally came from England or Wales, or at least he so stated. His place of origin was not definitely fixed.

The learned justice who presided at the Special Term was of the opinion that the State had failed to show with sufficient certainty that the deceased had not left collateral heirs, and upon this ground dismissed the complaint. The evidence upon the subject was given by a nephew and niece of James Wells' wife, both of whom had lived with said Wells and his wife for eleven years prior to his death in 1879, at which time the nephew was nineteen years of age, and the niece sixteen. They testified very positively, and were unshaken by cross-examination, that Wells had repeatedly said to them and in their presence that he had no brothers or sisters or other living relatives. The declarations of the decedent in such a case as this are competent proof. (*People* v. *Fulton Fire Ins. Co.*, 25 Wend. 219; *Young* v. *Shulenberg*, 165 N. Y. 388; *Layton* v. *Kraft*, 111 App. Div. 845.) This evidence the court in the case at bar entirely rejected because of some supposed interest on the part of the nephew and niece who gave it, but we can discern no way in which they can gain an advantage by the vesting of title in the State, since they made no claim to be of the blood of James Wells. There was an attempt made to show that at some time after the death of Mr. Wells' widow some steps were taken looking to obtaining an act of the Legislature releasing the title to her relatives, but it came to nothing. On the whole we consider that the plaintiff sufficiently proved that James Wells in his lifetime, and when he

had no ulterior purpose to subserve by telling an untruth, repeatedly declared that he had no living relatives. This we think, as against defendants having no claim of title whatsoever, was sufficient. We are not unmindful of the general rule that a plaintiff in ejectment must recover upon the strength of his own title and not on the weakness of his adversary's, but this rule, as has repeatedly been said by the Court of Appeals, "has its proper application where title is asserted against title; but not to a case where the defendants, making no claim of title, object that the plaintiff has not proved a perfect title against those who might claim adversely." (*Deering v. Reilly,* 167 N. Y. 190, 191; *Barson* v. *Mulligan,* 191 id. 306, 325.)

James Wells had been dead thirty-seven years when this cause was tried and no one claiming to be related to him had appeared or been heard of. He had owned the property for eighteen years before his death and, until shortly before he died, had occupied it and was well known to his neighbors, and so far as appears no one of them had ever heard of any relatives of his. His place of origin is unknown so that there is no place at which inquiries could be made. It will be seldom that the State can give better evidence of escheat than it has done here.

The judgment appealed from must be reversed, and a new trial granted, with costs to appellant to abide the result.

CLARKE, P. J., and DAVIS, J., concurred; SMITH and PAGE, JJ., dissented.

PAGE, J. (dissenting):

The defendants in this action of ejectment claim the right to hold the property by virtue of an assignment of a tax lien and also a tax lease for 999 years from the city of New York made in proceedings wherein the property was sold for taxes and assessments levied against it by the city between the years 1895 and 1912. Unless, therefore, the plaintiff, State of New York, showed that there was escheat of the property prior to those dates the defendants were entitled to possession. The city of New York thus transferred to defendants the title of

the owners of the property for the purpose of enforcing the tax lien, and unless the taxes were invalidly imposed because of prior escheat the defendants' title is good. This is not a case, therefore, where defendants assert no title, as in *Deering* v. *Reilly* (167 N. Y. 190) and *Barson* v. *Mulligan* (191 id. 306, 325), cited by Mr. Justice SCOTT, and the plaintiff must succeed on the strength of its title just as in any action of ejectment.

The learned justice at Special Term appeared to be satisfied with the proof of identity between the James Wells who died in 1879 and the James Wells who received a deed of the property in 1861. It seems to me, however, that the proof of this fact was far from satisfactory. It rests entirely on the statement of the witness Matthew S. Wilson, a nephew by marriage of the James Wells who died in 1879, that his uncle *" told "* him he owned the property. This was pure hearsay, and was not brought within any known exception to the hearsay rule. This testimony was objected to, and motion to strike it out denied, but no exception was taken. Nevertheless it has no more weight than hearsay testimony of an interested witness should be given. It is the only evidence which identifies the James Wells of the deed with the uncle by marriage of the witness. I can find no evidence in the record that James Wells ever occupied the premises. An attempt was made to prove this fact by testimony of James L. Wells, the present State Treasurer, who has long been familiar with Bronx real estate, but, on cross-examination, it appeared that this witness had no knowledge of the facts except that on investigation he learned that the property did not belong to his father, also named James Wells, and assumed that it must have belonged to the James Wells of One Hundred and Fifty-sixth street, because he was the only other James Wells known to the witness. We thus have proof that there were at least two men named James Wells at that time. How many more there may have been we do not know, but the name is not uncommon.

It does not appear that any deed to this property was left among the papers of the James Wells who died in 1879, and there is nothing to connect him with it except the hearsay testimony of his wife's nephew and his name.

As to the interest of the witness, the proceeding to obtain the property by act of the Legislature was taken on behalf of the witness Wilson himself and his sister after the death of Mrs. Wells, and was an attempt to have the land passed to the heirs of Mrs. Wells, who were the witness and his sister, by act of the Legislature, on account of failure of heirs of James Wells, and the witness frankly admitted his interest in this action.

As to the proof of failure of heirs of the James Wells who died in 1879, it rests solely upon the testimony of these two interested witnesses, Matthew S. Wilson and his sister. The alleged declarations of James Wells that he had no family of any kind, direct or collateral, were made in the presence of Matthew S. Wilson when he was between the ages of eight and twelve, or more than forty years ago. The other witness, his younger sister, heard the same declarations when she was between the ages of five and sixteen years. No doubt James Wells had no direct family, and so stated in the presence of these children, but it is doubtful from the evidence if his general statement that he had no family included collateral relatives. No attempt was made to find heirs of this James Wells in England or Wales, whence his nephew stated he was reputed to have come. I think, therefore, that the evidence was insufficient to warrant a judgment for the plaintiff, and the action was properly dismissed for failure of proof, and the judgment should be affirmed, with costs.

SMITH, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event. Order to be settled on notice.