In the Matter of the Accounting of FRANK B. KELLY, as Administrator of the Estate of ANNIE KELLY, Deceased.

Surrogate's Court, Monroe County, September 18, 1947.

*Joseph Kaufman* for petitioner.

*Glenn L. Buck* for Fred H. Hancock, respondent.

*Nathaniel L. Goldstein, Attorney-General (R. Lloyd Sandholzer* of counsel), for State of New York, respondent.

WITMER, S.   On this judicial settlement proceeding oral request is made for determination of the decedent's distributees, and whether or not her property escheats to the State of New York.   Decedent died January 11, 1943, and letters of administration were issued to her brother-in-law, the petitioner, on January 15, 1943.   In his petition for letters petitioner alleged "that he was informed by decedent that there are no relatives or next of kin."   In his petition for judicial settlement, dated March 26, 1946, petitioner alleges that respondent, Fred H. Hancock, claims to be a distributee.   Proofs were presented, and petitioner testified in support of respondent Hancock's claim, and contrary to his said petition for letters, that the decedent had spoken to him in her lifetime about a cousin in or near Chicago.

The evidence for respondent Hancock establishes that he is the son and sole distributee of Bert L. Hancock and Catharine Cole Hancock, now deceased, who lived in or near Chicago, and that said Catharine Cole Hancock was the sole surviving child and distributee of Anthony Cole and Catherine Gleason Cole, his wife; that Anthony Cole formerly lived in Rochester, New York and had a burial lot in Holy Sepulchre Cemetery here; that he and his wife are buried therein; that on June 24, 1920, respondent Hancock's mother, Catharine Cole Hancock, wrote a letter to Holy Sepulchre Cemetery wherein she granted permission to the decedent herein and her husband, James Kelly, to be buried on said Cole lot.   The letter stated as follows: "Permit to my burial lot a cousin of my

mother to James Kelly and wife, Anna. My father name Cole, lot 9 section 1. Katharine Cole Hancock. P.S. It was my father's wishes that they could be buried there.'' It appears that said Catharine Cole Hancock frequently used a ''K'' in her first name. The evidence also shows that James Kelly had died prior to the date of said letter and had been buried in another lot in the cemetery; that the decedent had written to Catharine Cole Hancock for permission to move her husband's body to the Cole lot; and that on September 13, 1920, his body was moved to the Cole lot. Decedent was buried in the same lot in 1943. It further appears that a letter dated August 11, 1905, from said Catharine Cole Hancock to Holy Sepulchre Cemetery authorized the burial of John Kelly and Catharine Kelly, his wife, in said lot 9, section 1. John Kelly, brother of James, was buried in said lot in 1908, and his wife, Catharine Kelly, was buried therein in 1922.

Petitioner and his wife testified that about the time decedent arranged for the transfer of her husband's body to the Cole lot, they had a conversation with her in which she read to them a letter which she had received from a party in or near Chicago; that the letter began ''My dear cousin'', and that decedent spoke of having a cousin in the ''west'' in or near Chicago. Respondent Hancock also testified that his mother often spoke of decedent as ''cousin''; and that as a boy he visited decedent with his mother, and that decedent visited his mother in Chicago several times.

No written pleadings are before the court other than the petition for judicial settlement showing that the respondents are interested parties. Respondent Hancock orally claims through his attorney that he is the sole distributee of the decedent and is entitled to her estate. Respondent, State of New York, orally claims through its Assistant Attorney-General that there is a defect of heirs and that the estate herein escheats to the State of New York. The account shows gross personal assets of $7,654.38 with a balance on hand of $5,788.50, and also shows that the decedent left her residence in Rochester. The petition for letters of administration estimates the value of said residence at $2,000. There are two claims for services in the sum of $5,900 which remain to be determined. On this state of the record respondent Hancock rested, and the State of New York moved to dismiss said respondent's claim for failure to prove that he is a distributee entitled to the estate.

The State's position is not entirely clear. Although its claim was for an escheat, when the matter was ready for submission its counsel argued that the State would hold the estate herein in trust for a period, during which those who claimed it might present their claims. This is a confusion of remedies. In the case of a claim of escheat the State is a necessary party and its right to the property is determined. In the case of a direction for payment to the State Comptroller under section 272 of the Surrogate's Court Act, after which time persons entitled may present their claims to such property, the right of the State is not determined, and the State is not even a necessary party. (*Matter of Davenport,* 142 App. Div. 41.) Because the Attorney-General seems to be standing on both of such grounds we shall consider them briefly.

Where a person dies without heirs, it is clear that his property escheats to the State at once. (Abandoned Property Law, § 200; *Seitz* v. *Messerschmitt,* 117 App. Div. 401, affd. 188 N. Y. 587; *Ulster County Savings Institution* v. *People,* 249 App. Div. 43; *Matter of Clark,* 271 App. Div. 691, 696.) There is no escheat unless there are no heirs. In the *Clark* case (*supra*) without any proof on behalf of the State, the court determined that an escheat had occurred, although the decedent had been dead only a few months and the administrator was investigating the existence of distributees and asserted that he believed that they existed. It has been held, however, that there is a presumption that a person does not die without heirs. (*Seitz* v. *Messerschmitt, supra,* 117 App. Div. 401, 406 *et seq.,* part of dissenting opinion in which majority concurred, affd. 188 N. Y. 587; *New York Central & H. R. R. R. Co.* v. *Cottle,* 102 Misc. 30, 41, affd. 187 App. Div. 131, affd. 229 N. Y. 514; *Matter of Owen,* 144 Misc. 688, 690), and that the burden of proof is upon the State to show that there are no heirs. (*New York Central & H R. R. R. Co.* v. *Cottle, supra; People* v. *Tuthill,* 176 App. Div. 631; *Jackson ex dem. People* v. *Etz,* 5 Cow. 314.) The State has offered no proof as to decedent's heirs, and it does not appear that it has made any effort to discover the facts concerning her relatives. Insofar as the State's motion to dismiss respondent Hancock's claim may be interpreted as one to grant the escheat, it is, therefore, denied, without prejudice to the right of the State to proceed with proof that decedent left no heirs. (See *Seitz* v. *Messerschmitt,* 117 App. Div. 401, *supra; People* v. *Tuthill,* 176 App. Div. 631, 634, *supra.*)

If the State's motion be viewed as one to dismiss respondent Hancock's claim for lack of sufficient proof, and for payment of the money to the State Comptroller under section 272 of the Surrogate's Court Act, a different problem is presented. As shown above, the State is not a necessary party in such a proceeding (*Matter of Davenport*, 142 App. Div. 41, *supra*); but the Attorney-General may be heard as an *amicus curiæ* in aid of the court in its determination of the identity of the distributees, if any.

Respondent Hancock's proof does not establish his common ancestry to the decedent. It establishes that his mother called decedent her cousin, and fairly establishes that decedent likewise spoke of her as "cousin". The testimony as to this relationship was properly received. (*Washington* v. *Bank for Savings,* 65 App. Div. 338, affd. 171 N. Y. 166; *People* v. *Tuthill,* 176 App. Div. 631, *supra*; cf. *Aalholm* v. *People,* 211 N. Y. 409.) But, people wholly unrelated frequently refer to each other as "cousin". Moreover, although petitioner testified that Catharine Cole Hancock was not related to his side of the family, no explanation was made of the burial of John Kelly and wife upon the Cole lot; and it may well be that the relationship, if any, is to decedent's husband. Upon such evidence, it cannot be said that respondent Hancock has made out a prima facie case for payment of the estate to him.

Respondent Hancock cites *Matter of Thompson* (271 App. Div. 570) in support of his claim that the evidence submitted is sufficient to make a prima facie case. As the cases cited therein show, however, that case stands upon the presumption of legitimacy, " one of the strongest and most persuasive known to the law * * *." (*Matter of Findlay,* 253 N. Y. 1, 7.) This is not such a case.

Accordingly, in the absence of further proof a direction will be made to pay the distributive remainder of the estate to the Comptroller of the State of New York for the benefit of the person or persons who may hereafter appear to be entitled thereto. (Surrogate's Ct. Act, § 272; *Matter of Germaine,* 268 N. Y. 475, revg. 244 App. Div. 374; *Matter of Sloat,* 141 Misc. 710, 716; *Matter of Haaser,* 187 Misc. 368.) Respondent Hancock has argued that this will shift the burden of proof from the State to him. That is not correct. The burden remains as it now is upon him to prove by satisfactory evidence that he is a distributee of the decedent.

Both respondents will be given an opportunity to submit further evidence on this issue. The order to be entered

herein may provide for the presentation of further proof within a reasonable time to be agreed upon by counsel with the approval of the court, and the order shall provide that upon failure of both respondents to offer further proof, as therein authorized, the decree of judicial settlement shall provide for distribution to the State Comptroller as provided in section 272 of the Surrogate's Court Act.

Submit order accordingly.