In the Matter of the Accounting of FRANK M. NICOLOSI, Public
Administrator of Queens County, as Administrator of the
Estate of WILLIAM J. BONNER, Deceased.

Surrogate's Court, Queens County, April 5, 1948.

Nathaniel L. Goldstein, Attorney-General (Corning G. McKennee of counsel), for State of New York.

George W. Herz for Public Administrator of Queens County, as administrator.

Joseph V. Iaricci, special guardian for unknown heirs.

J. Vincent Keogh, United States Attorney (Jeremiah J. Sullivan of counsel), for United States of America.

SAVARESE, S. The facts in this accounting proceeding are conceded. William J. Bonner, the decedent, served in the United States Navy from August 12, 1915, until his honorable discharge on August 12, 1919. From June 22, 1921, until his death, intestate, at the United States Veterans' Hospital at Northport, Long Island, on October 1, 1944, he was an adjudicated incompetent. He had been an inmate of veterans' hospitals continuously since November 13, 1922. Pursuant to the direction of the New York County Supreme Court, the decedent's committee, upon his discharge as such, delivered to the public administrator of Queens County, where decedent was domiciled, the assets remaining in his possession without prejudice, however, to the claim of the United States Government to the fund in the event the veteran did not leave him surviving any spouse, next of kin, or heirs entitled thereto. Decedent's distributees cannot with due diligence be ascertained. The account discloses that the committee delivered $1,550 in Adjusted Service Bonds and other assets worth $3,350.21 to the public administrator. The latter has retained the Adjusted Service Bonds intact. The proceeds of the other assets after deduction of administration expenses incurred to date now amount to $2,938.66. The source of these other assets has not been disclosed.

The United States of America lays claim to the entire distributable balance by virtue of sections 17 through 17j and section 450 of title 38 of the United States Code. These statutes, insofar as pertinent, are here set forth:

Section 17: "Effective ninety days after December 26, 1941, whenever any veteran (admitted as a veteran) shall die while a member or patient in any facility, or any hospital while being

furnished care or. treatment therein by the Veterans' Administration, and shall not leave surviving him any spouse, next of kin, or heirs entitled, under the laws of his domicile, to his personal property as to which he dies intestate, all such property, including money and choses in action, owned by said decedent at the time of death and not disposed of by will or otherwise, shall immediately vest in and become the property of the United States as trustee for the sole use and benefit of the General Post Fund * * *. The foregoing provisions are conditions precedent to the initial, and also to the further furnishing of care or treatment by the Veterans' Administration in a facility or hospital. The acceptance of care or treatment by any veteran admitted as such to any Veterans' Administration facility or hospital after ninety days from December 26, 1941, and as well the continued acceptance of care or treatment furnished by the Veterans' Administration after said ninety days by any veteran who is then receiving the same shall constitute an acceptance of the provisions and conditions of this subchapter and have the effect of an assignment, effective at his death, of such assets in accordance with and subject to the terms and provisions of this subchapter and the regulations issued in accordance with and pursuant thereto.''

Section 17a: '' The fact of death of the veteran (admitted as such) in a facility or hospital, while being furnished care or treatment therein by the Veterans' Administration, leaving no spouse, next of kin, or heirs, shall give rise to a conclusive presumption of a valid contract for the disposition in accordance with this subchapter, but subject to its conditions, of all property described in section 17 of this title owned by said decedent at death and as to which he dies intestate.''

Section 17f: '' Notwithstanding the crediting to said Post Fund of the assets, or proceeds thereof, of any decedent, whether upon determination by a court or the Veterans' Administration pursuant to the provisions of section 17 of this title, any person claiming a right to such assets may within five years after the death of the decedent file a claim on behalf of himself and any others claiming with the Administrator of Veterans' Affairs * * * ,''

Subdivision (3) of section 450: '' * * * *Provided further,* That any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from compensation, automatic or term insurance, emergency officers' retirement pay, or pension, payable under

said Acts, which under the law of the State, wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Veterans' Administration, and shall be deposited to the credit of the current appropriations provided for payment of compensation, insurance, or pension.''

The public administrator, joined by the special guardian for unknown heirs and the Attorney-General of the State of New York, take the position that the above-quoted statutes are not operative unless and until the Federal Government meets the burden of proving that the decedent left no distributees.

The property of a person who dies intestate and without heirs escheats to the State by operation of law. (N. Y. Const., art. I, § 10; Abandoned Property Law, § 200; *Johnston* v. *Spicer,* 107 N. Y. 185; *Matter of People [Melrose Ave.]*, 234 N. Y. 48; *Matter of Clark,* 271 App. Div. 691.) The State has the burden of proving that a decedent left no heirs, for there is a presumption that a person does not die without heirs. (*Matter of People [Melrose Ave.], supra,* p. 51; *Matter of Kelly,* 190 Misc. 250, 253. See *People* v. *Tuthill,* 176 App. Div. 631; *Matter of Clark, supra,* p. 696, as to the proof required.) Where the State does not establish its right to escheat, and no distributees appear to claim the estate, payment is made to the State Comptroller for the benefit of unknown distributees. (Surrogate's Ct. Act, § 272.) Within the city of New York, payment is initially made to the city treasurer by the public administrator. (Surrogate's Ct. Act, § 136-z, subd. [16].) Such funds find their way to the State Comptroller if unclaimed after twenty years. (Abandoned Property Law, §§ 600–603.) There is evidently no time limit within which distributees must present their claims to the State Comptroller. (See *Matter of New York University [State Comptroller],* 271 App. Div. 131, affd. 296 N. Y. 913.)

A person may contract to bequeath his estate in any manner he may desire so long as he does not offend our public policy. (*Morgan* v. *Sanborn,* 225 N. Y. 454; *Johnston* v. *Spicer, supra;* cf. Personal Property Law, § 31, subd. 7.) An act of Congress is the supreme law of the land and prevails over section 272 of the Surrogate's Court Act. (U. S. Const., art. VI; *Matter of McGhee,* 149 Misc. 713, affd. 239 App. Div. 763, affd. 262 N. Y.

686.) When section 136 of title 24 of the United States Code (36 U. S. Stat. 736), the predecessor of the present statute, was in effect, the Veterans' Administration actually went through the formality of having the veteran sign an agreement to leave his personal property to the United States if he died intestate and without heirs as a condition of his admission to a veteran's facility. This practice has been upheld as against next of kin who failed to appear within the five-year time limit (*United States* v. *Stevens,* 302 U. S. 623) and as against the State of New York. (*Matter of McGhee, supra.*) The present statute (55 U. S. Stat. 868) set forth above, does not require any actual contract or agreement. Even the prior law was held to be self-executing, so that the fact that the veteran was incompetent at the time he signed an agreement of this nature upon admission did not affect the right of the United States to obtain his property in default of heirs. (*Abbott* v. *Morgenthau,* 93 F. 2d 242, certiorari denied 303 U. S. 638.) In recent litigation under the present statute the States of California and Massachusetts were both unsuccessful in claiming the assets of a deceased veteran where they consisted wholly of the residue of pension moneys or Adjusted Service Bonds. (*Matter of Lindquist,* 25 Cal. 2d 697, certiorari denied 325 U. S. 869; *Matter of Walker,* 25 Cal. 2d 719, certiorari denied 325 U. S. 869; *Coakley* v. *Attorney General,* 318 Mass. 508.) Apart from the Adjusted Service Bonds which were paid to decedent as additional compensation for his service in World War I, it is not claimed that the distributable balance herein consists of the residue of governmental gifts. This fact, however, is not controlling. (*Matter of McGhee, supra.*)

The contention that the phraseology of the statute imposes upon the United States the burden of proving that the decedent left no distributees as a condition precedent to its right to the fund is a novel one. This question was not raised in any of the cases to which this court's attention has been called nor have any been disclosed by its independent research. Such a rule would compel the United States to prove an escheat, and in default of such proof the State would take by virtue of the provisions of the Surrogate's Court Act and the Abandoned Property Law. The intent of Congress in enacting this legislation would seem to have been to recapture unexpended benefits conferred upon veterans who die in Government institutions leaving no distributees entitled to their personal estates. (See *Abbott* v. *Morgenthau, supra,* p. 244.) The statute substitutes

the Federal Government for the State as the sovereign in whom unclaimed property vests upon failure of proof of heirs. To cast upon the United States the burden of proving an escheat would effectively thwart the Congressional intent.

Even a literal reading of section 17, moreover, compels the conclusion that the rights of the United States are paramount. This veteran did not leave him surviving any " next of kin * * * entitled, under the laws of his domicile, to his personal property ". At least that is the inference to be drawn where no one has appeared despite the lapse of over three years since his death, the diligent efforts of the public administrator to locate next of kin, and the publication of notice in this proceeding. At this point no private person is " entitled " to this decedent's estate. It therefore vests in the United States Government, subject to the claims of distributees presented within five years of the date of death.

The court, therefore, holds that the distributable balance herein is to be paid to the Treasurer of the United States. Account settled. Submit decree on notice.