Bertram R. Gelfand, S.
In this proceeding to judicially settle the account of the Public Administrator, the only remaining issue is the objections of Goldie Berkowitz, in which she contends that she is the sole distributee of decedent.
The testimony offered presents an evidentiary problem that appears to be a source of some confusion in this State as a result of the presence in our statutory law of CPLR 4519, which, prima facie, appears to be in conflict with the kinship exception to the hearsay rule when it involves testimony by *667 an objectant as to statements of the decedent whose estate is at issue. The question presented is whether an objectant attempting to establish the pedigree of decedent for the purposes of being declared decedent’s distributee is barred, under CPLR 4519, from testifying as to conversations with the decedent, or whether such evidence is admissible under the pedigree exception to the hearsay rule. Determinations of this question have not been characterized by any uniform conclusion as to the admissibility of such evidence (Matter of Phyllis D. v Salvatore D., 79 Misc 2d 6, 7; 5 Weinstein-Korn-Miller, NY Civ Prac, par 4519.22; contra, Matter of Esther T., 86 Misc 2d 452, 456).
Examination of the reasons for the existence of the kinship exception to the hearsay rule suggests that an interpretation of CPLR 4519 which would extend its preclusionary aspects to conversations relative to pedigree between an objéctant and the decedent whose estate is at issue would be a limitation upon the pedigree exception that is not supported by reason. The rules of evidence are designed to promote truth and justice. Pursuit of this goal requires that procedural barriers not be developed which will deny to the court pertinent evidence which would otherwise be unobtainable.
The pedigree exception to the hearsay rule is deeply imbedded in Anglo-Saxon jurisprudence. It is a rule of necessity which developed as a result of a recognition of the otherwise insuperable barriers which alleged distributees of a decedent face in attempting to establish a family tree which frequently involves several generations and includes individuals who lived and died under a variety of circumstances in numerous jurisdictions. Recognition of this peculiar problem was summarized by Lord Chancellor Erskine as early as 1806, as follows: "Courts of Law are obliged in cases of this kind to depart from the ordinary rules of evidence; as it would be impossible to establish descents according to the strict rules, by which contracts are established, and subjects of property regulated; [by] requiring the facts from the mouth of the witness, who has the knowledge of them. In cases of pedigree therefore recourse is had to a secondary sort of evidence: the best the nature of the subject will admit; establishing the descent from the only sources, that can be had.” (Vowles v Young, 13 Ves 140, 143.)
The existence of the kinship exception to the hearsay rule was recognized in American jurisprudence by the United *668 States Supreme Court in Fulkerson v Holmes (117 US 389, 397) where it was stated: "The proof to show pedigree forms a well settled exception to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity; for, as in inquiries respecting relationship or descent, facts must often be proved which occurred many years before the trial, and were known to but few persons, it is obvious that the strict enforcement in such cases of the rules against hearsay evidence would frequently occasion failure of justice.”
It is well established that under the pedigree exception to the hearsay rule in New York State an objectant is permitted to offer clearly self-serving hearsay testimony as to conversations relative to the pedigree of decedent which said objectant had with countless persons who are deceased or unavailable relatives of decedent (Matter of Morris, 277 App Div 211; Matter of Kelly, 190 Misc 250, 254, citing Washington v Bank for Sav., 65 App Div 338, affd 171 NY 166; People v Tuthill, 176 App Div 631). It appears that there is no question about an objectant being free to testify as to conversations she had with her late mother, father, siblings, grandparents, or countless other relatives regarding the makeup of decedent’s family. However, when objectant attempts to testify to similar conversations with the decedent whose estate is at issue the spectre of CPLR 4519 is raised as an alleged bar based on such conversations being "transactions” with decedent. It is difficult to see any rationale which would justify admitting under the kinship exception to the hearsay rule objectant’s account of conversations with countless deceased persons and then making an exception with reference to a conversation with the decedent whose estate is at issue.
Testimony as to a conversation between decedent and objectant is no more subject to being perjurious than would be conversations objectant testified to with other deceased or unavailable persons. The reliability of what the decedent whose estate is at issue said to objectant is no less incapable of direct verification than is what other decedents may have said to the same objectant. A conversation between objectant and decedent in the ordinary course of familial relationships is subject to the same tests of credibility as would apply to any other self-serving testimony.
It should be noted that allowance of such testimony does not open the floodgates to claims which rest on no firmer a *669 foundation than self-serving testimony by a claimant as to decedent’s statements. Even though such testimony is not barred by CPLR 4519, objectant still may not establish her status as a distributee solely based upon her testifying as to self-serving hearsay. Such testimony may only supply a part of the cameo that constitutes a family tree, not all of it. Objectant’s offer of this type of proof must be accompanied by other independent evidence of decedent’s pedigree.
[Further material omitted from publication.]