## DURACK v. NATIONAL HOME FOR DISABLED VOLUNTEER SOLDIERS et al.
## HEGARTY v. SAME.

District Court, D. Maine, S. D. January 29, 1930.

Nos. 186, 205.

John E. Wilson, of Augusta, Me., for plaintiffs.

F. R. Dyer, U. S. Atty., and W. B. Nulty, Asst. U. S. Atty., both of Portland, Me., for defendants.

PETERS, District Judge. These two cases, involving similar facts and the same principles, were tried by me without a jury on stipulation. The defendant Hanley is the treasurer of the eastern branch of the National Home for Disabled Volunteer Soldiers located in Maine. The plaintiff's testators, Rowen in one case and McCarthy in the other, Civil War veterans, were inmates of that branch for many years. Each was a pensioner of the government, and died at the home. McCarthy was found mentally incompetent by the medical board of the eastern branch in 1921 and Rowen in 1926. After those dates, very little of the pension money accruing for his benefit was drawn by either man or on his account, and for the accumulations of unpaid pension to time of death, amounting to $1,616 and $4,405, respectively, these suits are brought by the executors.

It is claimed by the plaintiffs that these sums of money are part of the personal estates of the deceased pensioners, and that the plaintiffs, as executors, are entitled to payment of the same from the treasurer of the eastern branch.

The defendants maintain that the money must be paid to certain dependents specified by law, and, in the absence of any such, to the post fund.

Pension money due members of such National Homes is paid to the treasurer of the particular branch in accordance with section 2 of the Act of February 26, 1881, 21 Stat. 350, re-enacted by the Act of August 7, 1882, 22 Stat. 322 (24 USCA § 138), which provides that pensions payable to members of such homes shall be paid to the treasurer, to be disbursed for the benefit of the pensioners under the rules and regulations governing the home.

It was also originally provided by the Act of February 26, 1881, c. 80 (24 USCA § 138, note), which was revived and continued in force by the Act of August 7, 1882, c. 433, that "any balance of the pension which may remain at the date of the pensioner's discharge shall be paid over to him; and in case

of his death at the home, the same shall be paid to the widow, or children or in default of either to his legal representatives."

By the Act of July 1, 1902, c. 1351, § 1, 32 Stat. 564, 24 USCA § 139, it was provided that "any balance of pension money due a member of the National Home for Disabled Volunteer Soldiers at the time of his death shall be paid to his widow, minor children or dependent mother or father in the order named, and should no widow, minor child, or dependent parent be discovered within one year from the time of the death of the pensioner, said balance shall be paid to the post fund of the branch of said national home of which the pensioner was a member at the time of his death, to be used for the common benefit of the members of the home under the direction of the Board of Managers, subject to future reclamation by the relatives designated in this section upon application filed with the Board of Managers within five years after the pensioner's death."

In one of the instant cases the treasurer has already paid the money into the post fund, and in the other is simply awaiting a possible claim by any dependent relatives referred to in the statute.

The plaintiffs argue that section 139 of title 24 of the United States Code (24 USCA § 139) does not apply to these cases because (as they claim) the funds received by the treasurer from the Pension Bureau for specified pensioners, and accumulated over a period of years, subject to withdrawal by the pensioners at any time, is not "pension money" within the terms of the section.

The plaintiffs appear to regard the accumulations of pension as in the category of money paid to the pensioners and then left by them in the hands of the treasurer of the branch home for safe-keeping, subject to their order. Such is not the case. When the total amount of the pension roll of the inmates of the branch home has been ascertained, the disbursing clerk of the Pension Bureau notifies the treasurer that the Bureau has transmitted to the Treasurer of the United States a certain amount of money which is placed to the official credit of the branch home treasurer in a special deposit account for payment of pensions to a certain number of inmates of the home as per vouchers certified by the Commissioner of Pensions. Immediately the Treasury Department notifies the treasurer of the branch home that there is in the United States Treasury the same amount of money subject to the official check of the branch home treasurer. The branch home treasurer draws his official checks on the United States Treasury in favor of each inmate, if he receives the whole amount of his pension, or in favor of such persons as are entitled to a part of it under the regulations of the home. The branch treasurer can only draw money from the United States Treasury in accordance with law and with the regulations established by authority of law. Any money not thus drawn remains in the Treasury, carried in this special deposit account until disbursed as provided by law.

The accumulation of unpaid pension here sued for in the case of Hegarty, executor of McCarthy, now remains in the branch treasurer's special deposit account in the United States Treasury. In the case of Durack, executor of Rowen, the branch treasurer, having discovered no dependent relatives within one year after the death, has drawn his official check on the United States Treasury, and transferred the arrears of pension money to the post fund as he was required to do by section 139, title 24, United States Code (24 USCA § 139), above referred to.

It is clear that the action of the branch treasurer in paying one sum to the post fund and in holding the other for possible dependent relatives of McCarthy is authorized by law, if these funds were "pension money." I have no doubt they were.

Money appropriated by Congress for the payment of pensions and in a special deposit account of a branch treasurer for the purpose of disbursing to pensioners is pension money; certainly until it is paid out, and even then in some cases if it can be identified.

The Comptroller General has held that the drawing of a check by a treasurer of a branch of the National Home for Disabled Volunteer Soldiers, upon money held by him in accordance with law, for pensioners, inmates of the home, and the delivery of such check to the pensioner, does not change the proceeds thereof from pension money to assets of the estate of the pensioner, where the pensioner died subsequent to the receipt of the check without having cashed it; and that the amount of such check, unless claimed by the widow or other dependents within the time named in section 139, becomes the property of the home, as provided in said section; manifestly a case much stronger than this in favor of changing pension money to personal assets. Comptroller General's Decisions, vol. 4, p. 752.

The plaintiffs urge, through their counsel, that, if the section above referred to is held applicable to funds in the situation existing

in these cases, it should only have application to such amounts as represent fractions of a month. I do not consider this contention well founded. The plain language of the statute and its interpretation and administration by the Executive Department of the government for many years has been to the contrary, and I am constrained to hold that the statute applies to all the money in these cases undisbursed to the pensioners at the times of their deaths.

It follows that these suits by the personal representatives of the deceased pensioners against the branch home and its treasurer to pay them the money in question cannot be maintained.

Judgment ordered for defendants.