**DURACK et al. v. NATIONAL HOME FOR DISABLED VOLUNTEER SOLDIERS et al.**

No. 2467.

Circuit Court of Appeals, First Circuit.

Nov. 8, 1930.

John E. Wilson, of Augusta, Me. (Dudley B. Wallace, of Springfield, Mass., on the brief), for appellants.

Frederick R. Dyer, U. S. Atty., of Portland, Me. (William B. Nulty, Asst. U. S. Atty., of Portland, Me., on the brief), for appellees.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

WILSON, Circuit Judge.

These are two actions, docketed as one appeal, to recover a balance of pension money paid to the treasurer of the Eastern Branch of the National Home for Disabled Volunteer Soldiers located at Togus, Me., for the benefit of two inmates of the home who died while inmates thereof. Judgment was ordered for the defendants in the District Court. The claims of the executors of the deceased inmates involve a construction of chapter 80 of Public Laws enacted February 26, 1881, 21 Stat. 350; chapter 433, Public Laws enacted August 7, 1882, 22 Stat. 322, now contained in section 138 note, 24 USCA p. 74; and chapter 1351, Public Laws enacted July 1, 1902, 32 Stat. 564, now contained in section 139, 24 USCA p. 76.

Under the Act of 1881, c. 80, § 2 (24 USCA § 138 note), Congress appropriated the necessary funds for the payment of all pensions and provided that all pensions payable to pensioners who are inmates of the National Home for Disabled Volunteer Soldiers shall be paid to the treasurer or treasurers of said Home for the benefit of the pensioners, to be disbursed under such rules and regulations as the managers of the home may establish. "Any balance of the pension which may remain at the date of the pensioner's discharge shall be paid over to him; and in case of his death at the home, the same shall be paid to the widow, or children or in default of either to his legal representatives." It is clear, we think, that the "balance" referred to in this act was any balance of moneys which had been paid to the treasurer of the home for the benefit of the pensioner who was an inmate and had not been disbursed for his benefit up to the time of his discharge or death.

Congress under this act retained a control over pension moneys paid over to the treasurer of the home so long as the pensioner was an inmate, and directed the disposition thereof in case of his discharge or death while an inmate.

The General Appropriation Act of 1882, c. 433, 22 Stat. 322 (24 USCA § 138 note), also contained provisions for the payments to pensioners who were inmates of homes and expressly revived the provisions of the act of 1881 as to the disposition of any balance remaining in the hands of the treasurer of a home in case of the death of an inmate.

It was evidently the view of Congress that the provision as to the disposition of any balance in the hands of a treasurer upon the death of an inmate continued in force under the Acts of 1881 and 1882, and without change, until 1902, when Congress also in an appropriation bill, chapter 1351, 32 Stat. 564 (24•USCA § 139), under the title "National Home for Disabled Volunteer Soldiers," provided that: "*Hereafter* any balance of pension money due a member of the National Home for Disabled Volunteer Soldiers at the time of his death shall be paid to his widow, minor children or dependent mother or father in the order named, and should no widow, minor child, or dependent parent be discovered within one year from the time of the death of the pensioner, said balance shall be paid to the post fund of the Branch of said National Home of which the pensioner was a member at the time of his death, to be used for the common benefit of the members of the Home under the direction of the Board of Managers, subject to future reclamation by the relatives hereinbefore designated, upon application filed with the Board of Managers within five years after the pensioner's death." (Italics ours.)

■ Such a provision is obviously inconsistent with the provision contained in the act of 1881, and as the compilers of the United States Code suggest, the earlier act was superseded by the provision contained in the appropriation bill of 1902, which provision they included as section 139 of the Code. It is true the compilers do not include the act of 1881 among its repealed statutes, yet the omission to do so cannot overcome what appears to be the plain effect of the later act.

The provisions of the Act of 1912, c. 301, § 6, 37 Stat. 311, 313 (38 USCA § 52), which is also an appropriation act, provided a different method from formerly, for the payment of pensions to others than the inmates of homes, but left in force the act of 1882 as to the method of payment of pensions to inmates. It contains no reference, however, to the disposition of any balance in the hands of the treasurer of a home in case of the death of an inmate. If Congress had by the reference to the act of 1882 intended to restore the provisions of the act of 1881 as to the disposition of any balance in the hands of the treasurer of a home at the death of an inmate, we think it would have so stated.

The construction contended for by the government in this case, and upheld in the court below, appears to be the only reasonable one.

The intent of Congress, we think, is further evidenced by chapter 384, Public Laws 1910, 36 Stat. 736, now section 136, 24 USCA p. 73, under which it is provided that every inmate of a home on entering the home enters into an agreement that all personal property he may possess at his death, in case he dies in the home, leaving no heirs at law or next of kin, and not disposed of by will, shall vest in the board of managers of the home for the benefit of the "post fund" of the home.

■ As to any balance of pension moneys unapplied for his benefit at the time of his death, Congress directed it to be paid into the "post fund" only in case there were no widow, minor children, or dependent parent. The reason for the difference in the class of persons entitled to receive before the "post fund" should be benefited is too obvious to require comment.

The judgments of the District Court are affirmed.