**ABBOTT et al. v. MORGENTHAU, Secretary of Treasury, et al.** [*]

No. 6951.

United States Court of Appeals for the District of Columbia.

Argued June 7, 8, 1937.

Decided Sept. 30, 1937.

Rehearing Denied Nov. 19, 1937.

STEPHENS, Associate Justice, dissenting.

F. Eberhart Haynes and Thomas E. Rhodes, both of Washington, D. C., for appellant.

Howard Boyd, Asst. U. S. Atty., of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, GRONER, and STEPHENS, Associate Justices.

GRONER, J.

James D. Felley was a Union soldier in the last year of the War between the States. He was honorably discharged in August, 1865, and thereafter became a resident of the state of New Hampshire. In 1894, and while still a resident of that state, he was adjudged insane and a guardian was appointed by the court. Subsequently the guardian obtained from the United States a pension for his ward which was regularly paid to the guardian until 1908. In the latter year Felley with the help of his guardian signed an application for admission to the National Home for Disabled Volunteer Soldiers at Togus, Me., and was duly admitted; and thereafter until his death all pension moneys due Felley were collected by the treasurer of the home. Felley died January 1, 1932, intestate, leaving surviving him as heirs at law and next of kin certain nephews and nieces. Suit was begun in 1934 against the Secretary of the Treasury, the Treasurer of the United States, and Hines, Administrator of Veterans' Affairs, by appellant as the legal representative and administratrix of Felley's estate to recover the sum of $8,139.50, accumulated and unexpended pension moneys of Felley, claimed to be a part of his distributable estate on the date of his death. Interest at 6 per cent. was also claimed.

The defendants (appellees) filed a motion to dismiss which was overruled by the District Court, and the case later came on to be tried on the merits. The trial court held that under the Act of July 1, 1902, the

*Writ of certiorari denied 58 S.Ct. 526, 82 L.Ed. —.

plaintiff (appellant) was not entitled to recover.

The single question for decision on this appeal is whether an accumulated pension fund credited to an insane pensioner who was admitted to a national soldiers' home after the passage by Congress of the Act of July 1, 1902, but prior to the passage of the Act of June 25, 1910, is payable to the post fund of such home upon the death of the pensioner in the home leaving no surviving widow, minor children, or dependent mother or father. The question appears to be new. The two principal cases under the statutes involved are: Durack v. National Home, etc. (D.C.) 38 F.2d 112; Id. (C.C.A.) 44 F.2d 516; Wood v. National Home, etc. (D.C.) 9 F.Supp. 403; National Home v. Wood (C.C.A.) 81 F. 2d 963.[1] The Supreme Court took the Wood Case on account of conflict with the Durack Case, and the opinion appears in 299 U.S. 211, 57 S.Ct. 137, 138, 81 L.Ed. 130. Nothing decided there is decisive here. The only other cases are United States v. Chelsea Trust Co. (D.C.) 15 F. Supp. 139, and O'Mara v. United States, 47 Ct.Cl. 27. Neither is in point. The answer to the question, therefore, lies wholly in the meaning and effect of the statutes.

The power to grant pensions has been conceded from the commencement of the Republic. It was exercised by the States and by the Continental Congress during the Revolutionary War and has continued from time to time to the present. After the War between the States the National Homes for Disabled Volunteer Soldiers were established, and these homes were maintained largely, if not entirely, by the bounty of the United States. By Act of February 26, 1881, § 2, 21 Stat. 350 (U.S.C. title 24, § 138, 24 U.S.C.A. § 138), it was provided that a pension payable to an inmate of the home should be paid to the treasurer of the home to be disbursed for the benefit of the pensioner, but in case of the pensioner's death at the home the unused balance should be paid to the widow, or children, or in default of either to the legal representatives of the deceased. By Act of August 7, 1882, § 1, 22 Stat. 302, 322 (24 U.S.C.A. § 138 note), the provisions of the act of 1881 were continued in effect. But by Act of July 1, 1902, § 1, 32 Stat. 552, 564 (U.S.C. title 24, § 139, 24 U.S.C.A. § 139), Congress enacted as follows:

"Hereafter any balance of pension money due a member of the National Home for Disabled Volunteer Soldiers at the time of his death shall be paid to his widow, minor children or dependent mother or father in the order named, and should no widow, minor child, or dependent parent be discovered within one year from the time of the death of the pensioner, said balance shall be paid to the post fund of the Branch of said national home of which the pensioner was a member at the time of his death, to be used for the common benefit of the members of the home under the direction of the Board of Managers, subject to future reclamation by the relatives hereinbefore designated [in this section], upon application filed with the Board of Managers within five years after the pensioner's death."

It will be observed that this act materially restricts the class of persons entitled to receive the accumulated balance of pension fund of the deceased veteran and, as was said by the Supreme Court in the Wood Case, "conflicts with and supersedes the corresponding provisions of the act of 1881." Inasmuch as the next of kin of Felley are not within the class embraced within the act of 1902, it is perfectly clear that under its provisions—if nothing else appeared—this suit could not be maintained. But appellant insists, first, that the Act of July 1, 1902, has been repealed by the subsequent Act of June 25, 1910, § 1, 36 Stat. 703, 736 (U.S.C. title 24, § 136, 24 U.S.C.A. § 136), and, second, that even if this is not correct she, as administratrix, is entitled to recover because at the time Felley became a member of the home his insanity rendered him incapable of contracting and therefore he did not become bound by the terms and conditions contained in the application for admission.

First. The 1910 act, which appellant relies on as having repealed the 1902 act, is in the following words:

"Hereafter the application of any person for membership in the National Home for Disabled Volunteer Soldiers and the admission of the applicant thereunder shall

---

[1] The Soldiers' Home was until 1930 controlled by a board of managers operating under a national charter, but in the latter year the corporation was dissolved and control of the home was thereafter placed under the Administrator of Veterans' Affairs.

be and constitute a valid and binding contract between such applicant and the Board of Managers of said home that on the death of said applicant while a member of such home, leaving no heirs at law nor next of kin, all personal property owned by said applicant at the time of his death, including money or choses in action held by him and not disposed of by will, whether such property be the proceeds of pensions or otherwise derived, shall vest in and become the property of said Board of Managers for the sole use and benefit of the post fund of said home, the proceeds to be disposed of and distributed among the several branches as may be ordered by said Board of Managers, and that all personal property of said applicant shall, upon his death, while a member, at once pass to and vest in said Board of Managers, subject to be reclaimed by any legatee or person entitled to take the same by inheritance at any time within five years after the death of such member. The Board of Managers is directed to so change the form of application for membership as to give reasonable notice of this provision to each applicant, and as to contain the consent of the applicant to accept membership upon the conditions herein provided."

■ The scope and effect of this act are explained at length in the Wood Case, supra. There the Supreme Court, relating the background of the act, shows that prior to its enactment Congress learned that a substantial number of inmates of the national homes were dying intestate and without heirs, leaving not only a balance of pension money remaining in the hands of the home treasurer but leaving also money on deposit in banks. These latter funds in the circumstances mentioned were being taken by the several States by escheat. To avoid this escheat Congress enacted the 1910 statute, the effect of which is to create in the United States a beneficial interest in all personal property (including pension accumulations) of a veteran entering the home after the passage of that act where, upon his death, such veteran has no heirs at law or next of kin and has not disposed of his property by will. Obviously to the extent the provisions of the 1910 act with relation to the disposition of the pension money unused at the member's death are inconsistent with the act of 1902, the latter is superseded. So much as this was said by the Supreme Court in the Wood Case. But, if the language of the act of 1910

plainly appears not to apply to members of the home admitted prior to its passage, then of course it does not supersede or affect the prior statute. There is nothing in the act which suggests the repeal of the former statute, and instead the contrary of this is true. As we have seen, the language of the act is: "Hereafter the application of any person for membership in the National Home * * * shall be and constitute a valid and binding contract."

And the conclusion is: "The Board of Managers is directed to so change the form of application for membership as to give reasonable notice of this provision to each applicant, and as to contain the consent of the applicant to accept membership upon the conditions herein provided."

■ At the time the act was passed Felley was a member of the home, and it is difficult to work out a satisfactory theory upon which to apply to his case a statute distinctly confined to persons entering after the passage of the statute. Here Felley entered the home under the 1902 act, and that act unquestionably controlled the disposition of his pension money at that time. It had no reference to his personal estate, and undoubtedly that estate in the event of his death intestate and without heirs at law and next of kin would have escheated to the State entitled to claim it. This is so because under the circumstances the 1910 act would not have governed, and this in turn is so because, as we have seen, Congress confined the terms of the new act expressly to those applicants thereafter admitted to the home, making their subsequent admission a binding contract between the home and themselves with relation to the disposition of all personal property belonging to them at death without heirs at law and intestate. And the 1910 act itself recognized that to accomplish this result the application form had to be changed to incorporate in it the contract of the parties. Felley was not a party to this changed form. The status of the residents of the home prior to the passage of the act remained precisely as it was under the 1902 act, so as a matter of fact and as a matter of law there is no rule which would justify a court in giving the new statute a retrospective effect. In United States v. Magnolia Company, 276 U.S. 160, 48 S. Ct. 236, 237, 72 L.Ed. 509, a case involving the construction of several statutes dealing with the question of interest on tax refunds, Mr. Justice Butler said: "Statutes

are not to be given retroactive effect or construed to change the status of claims fixed in accordance with earlier provisions unless the legislative purpose so to do plainly appears."

We are of opinion on the first point raised that the language and effect of the two statutes are plain and that appellant's contention in this regard is without merit.

Second. The second point insisted on by appellant is that, inasmuch as Felley was insane when he entered the home, he cannot be considered to have consented to the conditions of admission, and that, since one of these conditions was that he should accept the provisions of the act of 1902 in relation to the disposition of the pension fund remaining at his death, the agreement is invalid and the provision does not apply. The answer to this is plain. In the application form which Felley signed, under the heading "Regulations Governing Payment of Pensions," we find the following provision: "The balance due the pensioner at the date of his death shall be disposed of as directed by Act of Congress approved July 1, 1902."

But the inclusion of this language in the application form added nothing to the effectiveness of the statute, nor was there any necessity for an agreement on Felley's part to make it binding upon him as a member of the home; and this is true because there is nothing in the statute which requires consent to its terms on the part of the applicant for admission to the home. It is a self-executing act—complete in itself and requiring neither consent or agreement to become operative. It was not, therefore, Felley's consent that transferred the pension money to the home fund, but his presence in the home. Congress said he could not enjoy both gratuities. It must be borne in mind that Felley had no vested interest or rights in the pension money. He had no vested legal right to a pension at all, for, as has been said time and time again, pensions are bounties which Congress has the right to give, to withhold, to distribute, or to recall, at its discretion.[2] When, therefore, it is considered that Congress could annex whatever conditions it pleased whenever it pleased to the grant or the gratuity, it seems to us clear that it was competent for Congress to say, as it did say, that, if any one enjoyed the benefits of the home and was still a member of the home at the time of his death, his accumulated pension money should be distributed in a particular manner. Indeed, the provision in the act for distribution of the balance to certain limited relatives of the deceased pensioner was itself but another gratuity, and since, as we have pointed out, there is and can be no dissent to the proposition that Congress may give, withhold, distribute, or recall and change at will its gratuities, it seems beyond dispute that when it does so it is the duty of the courts to give effect to the congressional purpose.

Our conclusions, therefore, are, first, that the 1902 act was not superseded so far as persons of Felley's class are concerned—that the act of 1910 was intended to reach forward to affect those thereafter coming into the homes rather than backward to affect those already in the homes; and, second, that the insanity of Felley is a wholly immaterial circumstance in the application of the 1902 act to him and to those claiming under him. In this view it is clear that appellant has no valid claim to the money in the hands of appellees, and the court below properly dismissed the bill.

Affirmed.

STEPHENS, Associate Justice (dissenting).

I agree that the 1910 statute is not applicable, but I disagree with the conclusion of the majority that the 1902 statute cut off the rights of the next of kin. It did so only in respect of "any balance of pension money due a *member* of the National Home" [italics supplied]. In my opinion the pensioner was never legally a member of the Home. Certainly he was not a member before he entered the Home, and had he remained out it is without dispute that any estate which he left upon his death would have gone to his next of kin. He entered the Home through the act of his guardian without authority of the guardianship court. An insane person cannot be bound either by an act of his own or of his guardian in respect of the custody of his person or the disposition of his property, without the authority of the court which declared him incompetent and appointed his guardian. An insane person has, legally,

---

[2] Walton, Adm'r, v. Cotton et al., 19 How. 355, 15 L.Ed. 658; United States v. Hall, 98 U.S. 343, 355, 25 L.Ed. 180; United States v. Teller, 107 U.S. 64, 2 S.Ct. 39, 27 L.Ed. 352; Pennie v. Reis, 132 U.S. 464, 10 S.Ct. 149, 33 L.Ed. 426; Frisbie v. United States, 157 U.S. 160, 166, 15 S.Ct. 586, 39 L.Ed. 657.

no effective will. The orders of the court issued in his protection are his will. There was no order of court here authorizing the pensioner's becoming a member of the Home.

The majority opinion in effect construes the word "member" to mean "inmate," voluntary or involuntary. If this pensioner was a member of the Home and as such subject to the property consequences of the 1902 statute, so would be a sane man thrust into the Home against his will and kept there prisoner till he died. The statute did not, and could not constitutionally, compel the pensioner to enter the Home; in my opinion, it neither requires, nor permits, the construction that his entrance without authority of court made him within its terms a "member."