SCHAUER, J.
The United States of America has appealed from “the Decree of Settlement of Final Account and of Final Distribution” in the estate of Carl A. Lindquist, deceased, “distributing the residue of the estate of the decedent of the Probate Code of the State of California, and denying to the State of California under the provisions of Section 1027 *700 the claim of the United States of America for distribution of said residue under the provisions of Section 450 of Title 38 of the United States Code.” A hearing was granted by this court, after decision by the District Court of Appeal, First Appellate District, Division One, for the purpose of giving further study to the problems presented and in order to provide a decisive precedent for guidance in the settling of similar controversies which it has been suggested would otherwise arise in the future. After such study we have concluded that the opinion of the District Court of Appeal, prepared by Mr. Justice Ward, correctly treats and disposes of the issues involved, and it is therefore, with further discussion concerning one phase of the matter which was the subject of an added memorandum of authorities before us, adopted as and for the opinion of this court. Such opinion (with appropriate deletions of introductory and conjunctive matter as indicated) is as follows:
‘ ‘ [ ] Lindquist, a veteran of the United States Navy, was declared incompetent and the Pacific National Bank of San Francisco was appointed guardian of his estate. Shortly thereafter the Veterans’ Administration awarded him a pension under the provisions of the act of August 13, 1935, ch. 521, 49 Stats. 614 (38 U.S.C. 368) in the amount of $60 a month, and this was regularly paid to the guardian. At the time of the veteran’s death his estate, consisting entirely of an unexpended balance of pension payments'and amounting to the sum of $1,445.87, was turned over to the public administrator, and the Superior Court of the State of California in and for the City and County of San Francisco sitting in probate ordered distribution of the residue thereof to the State of California as escheated property. (Cal. Prob. Code, § 1027.)
"The main question presented is the construction of section 450(3) of title 38, U.S.C. The respondents contend that the act purports to lay down a rule of succession to property— a matter in which the federal government is without authority. The act so far as pertinent here provides as follows: ‘Where any payment of compensation, adjusted compensation, pension, emergency officers’ retirement pay, or insurance under any Act administered by the Veterans’ Administration is to be made ... to a person mentally incompetent, or under other legal disability adjudged by a court of competent jurisdiction, such payment may be made to the person who is constituted guardian, curator, or conservator by the laws of the *701 State of residence of claimant, or is otherwise legally vested ivith the care of the claimant or his estate. . . .
“ ‘Authority is granted for the payment [from funds so derived] of any court or other expenses incident to any investigation or court proceeding for the appointment of any guardian, curator, conservator, or other person legally vested Avith the care of the claimant or his estate or the removal of such fiduciary and appointment of another, and of expenses in connection with the administration of such estates by such fiduciaries, or in connection with any other court proceeding hereby authorized, when such payment is authorized by the Administrator. . . .
“ ‘Provided further, That any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from compensation, automatic or term insurance, emergency officers’ retirement pay, or pension, payable under said Acts, which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Veterans’ Administration, and shall be deposited to the credit of the current appropriations provided for payment of compensation, insurance, or pension.’
‘ ‘ The state contends that the pension was an outright, absolute and complete gift; that the statute above uses the term ‘escheat’ in a technical sense to mean succession to property where there are no heirs; and that the statute constitutes an attempt by the federal government to regulate the laws of succession of this state as to a particular type of property. It is admitted that the federal government has no power to pass laws regulating succession to property by citizens of the states, that being a power reserved by the Tenth Amendment to the states.
“The appellant contends that the word ‘escheat’ as used in the statute does not have the technical, limited meaning urged by the respondents; that when the statute is read as a whole it has a broader meaning; that the obvious purpose, intent and meaning of the statute is that the federal government has not *702 made the gift of a pension absolute and complete, but has retained in itself a contingent reversionary interest—that is, if the pensioner die possessed of any portion of the gift, and if he has not by will disposed of the interest, and if under the laws of the state the gift would otherwise escheat to the state, then the reversionary contingent interest of the federal government will vest.
“ The word ‘escheat’ under the old English feudal system relating to the lapsing or reversion of lands to the lord of the fee upon a failure of heirship has survived but outgrown its restricted meaning. The custom or practice was originally confined to land, but its scope has been enlarged to include personal property. (19 Am.Jur., p. 383, § 5.) In the ease of In re Melrose Ave. in Borough of the Bronx, 234 N.Y. 48 [136 N.E. 235, 237, 23 A.L.R. 1233], the court, in an opinion delivered by Justice Cardozo, said: ‘Escheat, as it survives in the Constitution of New York, preserves the name but ignores the origin of its feudal prototype. In origin it was an incident, not of sovereignty, but of tenure.’ ‘Escheat today is not the privilege of one, but the collective right of all when the individual right has failed.’
“In the United States, a state or some governmental agency is ordinarily the beneficiary of an escheat. In Canada, a province succeeds unless the Dominion by statute provides to the contrary. ‘As between the country or state of domicil and the country or state in which the property is located, real property escheats to the country in which the property is found, since every sovereign state has dominion over the land within its borders. In England it has been held that the personal property of an intestate dying without heirs, located in a foreign country, escheats to that country, and not to the country of domicil of the owner, the maxim “mobilia sequuntur personam” not applying, because the right claimed is not in the nature of a succession. However, in the United States it has been held that the state is not entitled by escheat to unclaimed property owned by non-residents within the state. ’ (19 Am.Jur., p. 382, §3.) The United States Government, in dealing with objects of its bounty, by statutory provision has applied the principle of escheat. In Tax Commission of Ohio v. Rife, 119 Ohio St. 83 [162 N.E. 390, 391], involving the question of exemption from taxation of insurance payable under an act of Congress *703 known as the World War Veterans’ Act, the following is set forth: ‘ “ That the compensation, insurance, and maintenance and support allowance payable under titles II, III, and IV, respectively, . . . shall be exempt from all taxation . . .” 43 Stats, at L. 607, 613, c. 320, see. 22, June 7,1924 (38 U.S.C.A., § 454) ’; ‘ “that in eases when the estate of an insured would escheat under the laws of the place of his residence the insurance shall not be paid to the estate but shall escheat to the United States and be credited to the military and naval insurance appropriation. This section shall be deemed to be in effect as of October 6, 1917.’’ 43 Stats, at L. 1302, 1310, c. 553, sec. 303, March 4, 1925 (38 U.S.C.A., sec. 514).’ The court said, pages 392-393: ‘It is to be noted that there shall be no escheat to the state of Ohio, as would be the case in the event the state statutes controlled entirely; but by the Act of March 4, 1925, the insurance shall not be paid to the estate of the insured, but shall escheat to the United States and shall be credited to the United States government life insurance fund or the military and naval insurance appropriation, as may be appropriate. . . . This right to take this property is by virtue of a contract between the United States government and the soldier, and does not arise by reason of the statutes of descent and distribution of this state, even though the government has seen fit to distribute such fund through the agency of an administrator acting under the statutes of descent and distribution of the state of Ohio.
“ ‘It is reasonable to assume that the purpose of Congress in making the payment to the administrator of the deceased soldier was for the benefit of the government, to relieve the government of the necessity of selecting and determining the next of kin of the deceased soldier to whom payment should be made, and to place this burden upon the administrator appointed in the state of the soldier’s residence. The administrator becomes a mere trustee or conduit for the government to make the payments to the persons entitled to the same under the provisions of the federal law. The intestate laws do not operate upon the decedent’s property, but are referred to in order to determine who shall take the proceeds of the insurance. Congress had a right to adopt the course of descent prevailing in the state of the residence of the soldier, and the proceeds of the insurance therefore pass under the federal act, the intestate laws of Ohio being adopted as *704 a standard or guide for ascertaining the next of kin to whom payment shall be made.’
‘ ‘ The deceased [ ] herein had no vested right to a pension. In Abbott v. Morgenthau, 93 F.2d 242 [68 App. D.C. 83], a case quite similar to the present, accumulated pension payments made to a guardian who had signed an application for his incompetent ward’s admission to a veterans’ home, were involved. At page 245, the court said: ‘It must be borne in mind that Folley had no vested interests or rights in the pension money. He had no vested legal right to a pension at all, for, as has been said time and time again, pensions are bounties which Congress has the right to give, to withhold, to distribute, or to recall, at its discretion. When, therefore, it is considered that Congress could annex whatever conditions it pleased, whenever it pleased, to the grant or the gratuity, it seems to us clear that it was competent for Congress to say, as it did say, that, if anyone enjoyed the benefits of the home and was still a member of the home at the time of his death, his accumulated pension money should be distributed in a particular manner. Indeed, the provision in the act for distribution of the balance to certain limited relatives of the deceased pensioner was itself but another gratuity, and since, as we have pointed out, there is and can be no dissent to the proposition that Congress may give, withhold, distribute, or recall and change at will its gratuities, it seems beyond dispute that when it does so it is the duty of the courts to give effect to the congressional purpose.’ (Writ of certiorari denied 303 U.S. 638 [58 S.Ct. 526, 82 L.Ed. 1098].)
“The laws of the United States dealing with matters within its jurisdiction are supreme ‘and the Judges in every State-shall be bound thereby, any Thing in the Constitution or. Laws of any State to the Contrary notwithstanding.’ (U. S. Const., art. VI, par. 2; [People ex rel. Happell v. Sischo (1943), 23 Cal.2d 478, 491 [144 P.2d 785, 150 A.L.R. 1431].]) Upon the state courts is often imposed the duty of enforcing federal laws, and in this connection they are likewise called upon to determine their constitutionality. If the terms of an act are constitutional, and due process is complied with, state agencies, judicial or otherwise, may with propriety and to the great convenience of the federal government lend their aid in their enforcement. Laws of the United States, when *705 constitutional, are binding upon state courts (Tax Commission of Ohio v. Rife, supra, 119 Ohio St. 83 [162 N.E. 390, 393]), and should not be viewed as emanating from a foreign jurisdiction. The principle of cooperation, not competition, should be followed. (Miller v. Municipal Court, 22 Cal.2d 818 [142 P.2d 297].) Congress is required to establish adequate and exact standards for the practical administration and reasonable enforcement of an act, and, Congress having done so, the state courts should assist and cooperate 'in any policy declared for all the states. (Miller v. Municipal Court, supra.)
“That unexpended pension money, under the conditions enumerated in the statute, should be returned tó its source and be used in further aid of veterans, is eminently just and equitable, and state agencies should accept the burden of aiding in the enforcement of the act unless the method of return is contrary to constitutional provision. In Beaver v. Short, 300 F. 113, the power to legislate relative to property constituting a gift from, or within the provisions of, the federal government is held to be exclusively within such government.
“If not prescribed by statute, a formal contract-is not required to bind one in the disposition of his property upon his death. (Keefe v. Keefe, 19 Cal.App. 310 [125 P. 929]; Barr v. Ferris, 41 Cal.App.2d 527 [107 P.2d 269]; Davis v. Jacoby, 1 Cal.2d 370 [34 P.2d 1026] ; Wolf v. Donahue, 206 Cal. 213 [273 P. 547].)
‘ ‘ There is no doubt that if the pension statute requires the pensioner to contract that in certain contingencies the unused pension fund shall revert to the donor, that such contract is valid, and that no formal consent by the pensioner or his guardian is required, the statute itself plus acceptance of its benefits constituting the contract. United States v. Stevens, 302 U.S. 623 [58 S.Ct. 388, 82 L.Ed. 484], reversing Stevens v. United States, 89 F.2d 151, is similar to the present case except that in the Stevens case in his written application for admission to a national soldiers’ home the applicant agreed that upon his death all of his personal property should pass to and vest in the board of managers of the home. (36 Stats. 736, 24 U.S.C.A., § 136.) Basing its decision primarily upon the Tenth Amendment to the Constitution the circuit court (89 F.2d 151) had held the act to be unconstitutional and *706 void. In United States v. Stevens, supra, 302 U.S. 623 [58 S.Ct. 388, 82 L.Ed. 484], the question was concisely stated as follows (p. 624): Can the United States enforce a contract executed by an ex-soldier in order to obtain admission into the National Home for Disabled Volunteer Soldiers, which contract provides that upon the death of the veteran while a member of the home, all his personal property shall pass to the home subject to be reclaimed within five years by any legatee or person entitled to receive the property by inheritance ?’ The Supreme Court there said (pp. 626-627): ‘The Court of Appeals was of the opinion that the Act of Congress authorizing the contract was void as an interference with the reserved rights of the state of the veteran’s legal domicile when he died (Massachusetts) in that “it was at most but an attempt to make a future testamentary disposition of McGovern’s property, when such a disposition could only be effected by will” ’ and held (p. 628): ‘Nothing in the record indicates that the agreement was not fairly and voluntarily entered into between the parties, or that it was inequitable, unjust or not upon valuable consideration. Both parties were competent to make the contract. This contract is valid and enforceable. ’ The statutory provision in the Stevens case specified ‘all personal property’; that in the present, applies to funds derived from ‘ compensation, automatic or term insurance, emergency officers’ retirement pay, or pension’ only (Italics added.) If the federal government simply by statute can lawfully create a contract that requires all the personal property of the pensioner to be paid over- in certain circumstances, it can also provide that as to the particular fund that is the subject of the gift, the donor retains a contingent interest. That is all the statute here involved attempts to do.
“ The statute herein makes no provision for consent by the veteran; the pension, if accepted, must be held in accordance with the statutory provisions applying to a gift, bounty or periodical allowance, the granting of such pension being sometimes referred to as part consideration of a contract of employment, or as additional payment for past meritorious service. While in California it has been held that upon the. granting of a pension to an employee a vested right accrues to the recipient, this simply means that the vesting is subject to contingencies, which may cause a discontinuance of pay *707 ment, such as conviction of a felony or an automatic decrease in amount (Douglas v. Pension Board, 75 Cal.App. 335 [242 P. 756]; Klench v. Board of Pension Fd. Commrs., 79 Cal. App. 171 [249 P. 46]; Jordan v. Retirement Board, 35 Cal. App.2d 653 [96 P.2d 973]) if the pension statute so provides. Likewise, a legislative body may provide that an unexpended portion of an allowance may revert or escheat to a designated governmental body. (United States v. Stevens, supra, 302 U.S. 623 [58 S.Ct. 388, 82 L.Ed. 484].) This rule applies to pensions. (Abbott v. Morgenthau, supra, 93 F.2d 242 [68 App.D.C. 83].)
"The fact that the veteran herein had been declared an incompetent makes no difference in the determination of the issues involved. In the Abbott ease, the veteran was insane and, as regards the absence of a requirement of consent, the court declared that ‘It is a self-executing act.’ In the present case the incompetent was represented by a duly appointed and qualified guardian. The receipt of the pension, a benefit to the incompetent, was one of the elements in a quasi contractual transaction which, it may be assumed, was approved by the superior court in the guardianship proceeding. The decree of distribution sets forth the appointment of the guardian, the award of the pension, the period of payment to the guardian and that the entire estate consisted of money received from the Veterans’ Administration.
‘ ‘ California has no right, by virtue of its sovereignty, to escheat the funds herein merely because they are found within the jurisdiction of the state. (First Nat. Bank v. California, 262 U.S. 366 [43 S.Ct. 602, 67 L.Ed. 1030].) They were derived from the United States government as an absolute gift only in the sense that the guardian might have expended the full amount had it been necessary. The gift was limited to the extent that if the veteran died intestate and without heirs, any unexpended' balance reverted to the donor. There is nothing inequitable in this provision of the federal statute. As between state and federal governments, there can be no question of the justice of the federal claim.
“Had the veteran in this case not been declared an incompetent he could have confided his pension to the keeping of the treasurer of a veterans’ home, reserving the right to withdraw and expend it as he desired, but with an agreement on his *708 part that if unexpended at the time of his death it should be retained by the home. In Mauck v. United States, 94 F.2d 745, using the Stevens case as authority, the court said (p, 746): ‘It was pointed out in the Stevens case that the statute requiring the contract did not operate to invade the reserved powers of the state over the course of intestate descent and distribution, inasmuch as the law of the veteran’s domicile, Massachusetts, permitted and enforced contracts directing the distribution of the promisor’s property after his death.
‘ ‘ ‘ Such is also the law in California. Nichols v. Emery, 109 Cal. 323, 41 P. 1089, 50 Am.St.Rep. 43; Booth v. Oakland Bank, 122 Cal. 19, 54 P. 370; Treadway v. Board of Directors, .14 Cal.App. 75, 85, 86, 111 P. 111, hearing by Supreme Court denied; Monsen v. Monsen, 174 Cal. 97, 99, 162 P. 90; cf. Cal.Civ. Code, sec. 1624, subd. 6; Levi v. Murrell, 9 Cir., 63 F.2d 670, 671.’
“ The entrusting of an incompetent pensioner’s funds to the management of a guardian appointed by a state court has been recognized by the Congress of the United States as proper. (Hines v. Stein, 298 U.S. 94 [56 S.Ct. 699, 80 L.Ed. 1063].) The necessity of a guardian applying for a pension on behalf of an incompetent veteran is apparent. (World War Veterans’ Act, 1924, § 21; 43 U.S.Stats., pp. 607, 613.) Whatever terms of a contract the veteran would be compelled to make, expressly or impliedly, in order to obtain the pension, they bind the guardian with equal force.
 “ The objection that the incompetent veteran cannot be considered as having consented to the condition of the gift is without merit. This conclusion is strengthened when the holding in Abbott v. Mdrgenthau, supra, 93 F.2d 242 [68 App. D.C. 83], is considered, namely, that the terms of the statute became operative upon the award and acceptance of the pension, and that formal consent to reversion of the unexpended funds was not necessary.
“ There is nothing unreasonable in the provision that the particular funds herein shall escheat to the federal government. The reference to ‘funds . . . which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State ’ is simply adopting, as regards the operation of escheat to the federal agency, the same rule that the state has adopted for itself. The method is a matter of convenience. There may be cases in which pension money *709 would escheat to the Veterans’ Administration, and other property, real or personal, owned by the decedent, would escheat to the state. Respondents’ contention that the pension money was paid to the deceased or his guardian without reservation that the United States could any longer assert control over it, is not well founded when the provisions of the pension act are given due consideration.
‘ ‘ This opinion would be unduly lengthened if each of respondents’ citations should be analyzed. None of them covers facts similar to those of this case. As an example, in Spicer v. Smith, 288 U.S. 430 [53 S.Ct. 415, 77 L.Ed. 875, 84 A.L.R. 1525], in which a living incompetent veteran was involved, whose guardian used as a depositary an institution which became insolvent, it was held that the guardian was not an agent of the United States, and that federal authority is not concerned in the depositary selected by him. No question of the right of escheat upon the death of the veteran was considered.
“In Carrier v. Bryant, 306 U.S. 545 [59 S.Ct. 707, 83 L.Ed. 976], the court held that bonds of the United States purchased by a guardian on behalf of an incompetent veteran with ‘payments of benefits’ were not exempt from execution. At page 549, the court simply said, quoting from Trotter v. Tennessee, 290 U.S. 354 [54 S.Ct. 138, 78 L.Ed. 358] : ‘We see no token of a purpose to extend a like immunity to permanent investments or the fruits of business enterprises. ’ In this respect it is interesting to observe changes in the statute as noted in Culp v. Webster, 25 Cal.App.2d Supp. 759 [70 P.2d 273] and Lawrence v. Shaw, 300 U.S. 245 [57 S.Ct. 443, 81 L.Ed. 623, 108 A.L.R. 1102].)
“In Christianson v. King County, 239 U.S. 356 [36 S.Ct. 114, 60 L.Ed. 327], the court determined. that territorial .schemes of government for Washington territory properly included provisions establishing and defining the jurisdiction of probate courts. The failure of heirs resulted in an escheat to the county, but the opinion was not based upon an agreement of the deceased that, in the absence of testamentary disposition or heirs, the property should revert to the federal government. The right of succession to estates of deceased persons is a matter for state cognizance. Referring to ‘ escheat, ’ the Christianson case, page 366 [239 U.S.], said ‘In the ease of the Ter *710 ritories, Congress could have dealt with this subject if it chose, but it did not see fit to establish a rule of its own. ’
‘ ‘ There is an abundance of authority, statutory and judicial, to the effect that the state has control over the disposition of the property of a deceased within its jurisdiction, and the authority to determine the right of succession, but there is no com stitutional provision that federal authority may not ordain as a condition to its grant that in a given contingency property shall escheat to a federal governmental agency.
“In some instances a distinction has been drawn between real and personal property—a question not necessary to discuss here. Whatever constitutional rights the state possesses, it may not decree to one party or to one governmental agency property that was obtained by donation from another if there was an agreement, express or implied, that upon certain contingencies it should revert to the donor.
"In determining the main question involved it must be borne in mind that the federal government has the right to grant pensions with reservations, as, for example, by providing for a reversion, as it did in the case before us. A state escheat statute is based upon state sovereignty and is a direction for the devolution of property. It may not prevail over the United States Constitution or over a congressional act which does not deprive one of property interests without due process of law.
“ [ ] The United States government delegated the state government of residence of the deceased veteran to act in its probate capacity to determine intestacy and lack of kindred ; it is therefore bound by the procedural methods adopted by such state. California statutes provide that property [provisionally] escheats to the state as of the date of the death of a decedent (Prob. Code, § 231) and ‘shall be held by the State Treasurer for a period of five years from the date of the decree making such distribution, within which time any person may appear in the superior court for the county of Sacramento and claim the estate or any part thereof. ’ (Prob. Code, § 1027.) In view of the adoption by the federal statute of the state law on the subject of heirship, under the facts of this case the property may not revert to the donor, the United States or its agency, until the five-year statutory period allowed for claimant heirs has elapsed. [ ] ”
Appellant, in the hearing before this court, has con *711 tended vigorously that immediately upon entry of the decree of distribution it became entitled to receive possession of the property involved and that we should accordingly modify the order of the District Court of Appeal requiring that the money be held by the State Treasurer for the period of five years. We are satisfied, however, that such order is proper. Section 1027 of the Probate Code, above mentioned, which concerns the time at which escheated property shall finally vest in the state, provides that “Executors or administrators, public or otherwise, must apply for distribution of an estate at the time of filing a final account. ... If the court, at the time set for the hearing of the final account, or such time thereafter to which the matter may be continued, does not distribute the entire balance of the estate remaining for distribution to known heirs, devisees or legatees entitled to succeed thereto, it must distribute to the State of California that portion of such estate not distributed to such known heirs, devisees or legatees.
“If the court distributes the estate or any portion thereof to the State of California, and the distributing clause contains words otherwise creating a trust in favor of certain unknown or unidentified persons as a class, such distribution shall vest in the State of California both legal and equitable title to the property so distributed; saving, however, the right of claimants to appear and claim the estate or any portion thereof, as in this section provided.” After setting forth various procedural steps thereafter to be followed and specifying that claimants may assert their claims within five years from the date of distribution to the state, the section then concludes: “Any person who does not appear and claim, as herein required, shall be forever barred, and such property, or so much thereof as is not claimed, shall vest absolutely in the State.” It thus appears that title to property distributed to the state pursuant to the provisions of section 1027 does not vest absolutely and unconditionally in the state, nor is the escheat complete, until the lapse of the five-year period without the appearance of claimants; theretofore the title held by the state is conditional and subject to divestment by the appearance of legitimate claimants. Thus until the five-year period has elapsed it cannot be finally determined whether the property will go to heirs of the deceased veteran or *712 whether the situation contemplated by the statute under which the federal government is now claiming—i.e., ultimate escheat to the State of California—will take place. As stated in Estate of Williams (1940), 37 Cal.App.2d 181, 186 [99 P. 2d 349], “The very purpose of the escheat statute is to permit heirs who were unknown at the time of distribution to subsequently establish their right to property distributed to the State for lack of ‘known heirs’.” Until expiration of the period during which such rights may be established it is substantially impossible for the United States to prove the fact which would make the reversionary provision of its statute operative (see State v. Smith (1886), 70 Cal. 153, 156-157 [12 P. 121]; People v. Roach (1888), 76 Cal. 294, 296-297 [18 P. 407]; State v. Miller (1906), 149 Cal. 208 [85 P. 609], which , cases, although arising under a different statute, are analogically pertinent) and hence it is proper that the funds here involved be held by the State Treasurer. We have considered the cases of Lyeth v. Hoey (1938), 305 U.S. 188 [59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R 410], and United States v. Allegheny County (1944), 322 U.S. 174 [64 S.Ct. 908, 88 L.Ed. 1209], cited by appellant, but find nothing therein which would lead us to a contrary conclusion on this point.
That portion of the decree appealed from which denied unconditionally the claim of the federal government to the residue of the estate of decedent is reversed, and the probate court is directed to amend its decree to provide that such residue shall revert and be paid to the United States of America upon elapse of five years from the date of distribution if the same . has not theretofore been claimed by any legal heir pursuant to the laws of California.
Gibson, C. J., Shenk, J., Curtis, J., and Traynor, J., concurred.