In the Matter of the Accounting of JOSEPH W. R. DALLY, as Administrator of the Estate of FRANK T. HAMMOND, Deceased.

Surrogate's Court, Orange County, February 9, 1954.

*J. Allan Ballman* for administrator, petitioner.

*J. Edward Lumbard, United States Attorney for the Southern District of New York* (*Earle N. Bishopp* and *Eliot H. Lumbard* of counsel), for the United States, respondent.

*Nathaniel L. Goldstein, Attorney-General* (*John F. Hmiel* of counsel), for the Comptroller of the State of New York, respondent.

*Irving Isseks,* special guardian.

CALYER, S.   The decedent was an incompetent veteran who died on February 22, 1953, while a patient in the Middletown State Hospital.  His net estate amounts to $909.48, and consists of a balance of unexpended benefits paid by the United States Veterans Administration and interest thereon.  From the petition and an affidavit of the attorney for the administrator, it appears that after due and diligent effort, the administrator has been unable to ascertain whether the decedent left any distributees, although the records of the Veterans Administration show that at one time the decedent was married.

Under these circumstances, the Attorney-General of the State of New York claims that the distributable balance should be paid to the Comptroller of the State of New York in accordance with the provision of section 272 of the Surrogate's Court Act. The United States Attorney for the Southern District of New York contends that it should be paid to the Veterans Administration pursuant to the provisions of subdivision (3) of section 450 of title 38 of the United States Code.

Section 272 of the Surrogate's Court Act provides, in pertinent part, as follows: "Where the person entitled to a legacy or distributive share is unknown, the decree must direct the executor, administrator, guardian or testamentary trustee to pay the amount thereof to the comptroller of the state, for the benefit of the person or persons who may thereafter appear to be entitled thereto."

Subdivision (3) of section 450 of title 38 of the United States Code provides, in pertinent part, as follows: "*Provided further,* That any funds in the hands of a guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, derived from compensation, automatic or term insurance, emergency officers' retirement pay, or pension, payable under said Acts, which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States and shall be returned by such guardian, curator, conservator, or person legally vested with the care of the beneficiary or his estate, or by the personal representative of the deceased beneficiary, less legal expenses of any administration necessary to determine that an escheat is in order, to the Veterans' Administration, and shall be deposited to the credit of the current appropriations provided for payment of compensation, insurance, or pension."

The United States Attorney contends that under New York law the property of a person who dies intestate and without heirs escheats to the State, that the Federal statute prevails over the Surrogate's Court Act, and that the burden of proving that the decedent left no heirs is upon the State. In support of this position, he cites the following authorities. (N. Y. Const., art. I, § 10; Abandoned Property Law, § 200; U. S. Const., art. VI, 2d par.; *Matter of McGhee,* 149 Misc. 713, affd. 239 App. Div. 763, affd. 262 N. Y. 686; *Matter of Lindquist,* 25 Cal. 2d 697; certiorari denied 325 U. S. 869; *Matter of Walker,* 25 Cal. 2d 718; *Matter of Clark,* 271 App. Div. 691; *Matter of Kelly,* 190 Misc. 250; *Matter of Bonner,* 192 Misc. 753; *Abbott* v. *Morgenthau,* 93 F. 2d 242; *Matter of Campbell,* 195 Misc.

520; *Matter of Price,* 199 Misc. 833; *Matter of Grout,* N. Y. L. J., Nov. 20, 1950, p. 1248, col. 7.) These authorities sustain the propositions for which they are cited, but are not controlling in this case.

The *Lindquist* and *Walker* cases (*supra*), were decided under a California statute which provided that property of one dying intestate and without heirs provisionally escheats to the State as of the date of death and shall be held for five years, within which time it may be reclaimed. The court held in the *Lindquist* case, which was followed in the *Walker* case decided the same day, that the escheat to the State was not complete until the lapse of the five-year period without the appearance of claimants and that the property could not revert to the donor, the United States or its agency, until that period had expired.

The *Clark* and *Kelly* cases (*supra*), each involved a situation in which the State of New York was claiming the property by escheat, which is not the situation in this case.

In the cases of *Abbott* v. *Morgenthau, Matter of McGhee* and *Matter of Bonner* (*supra*), the decedent was a patient in a Veterans Administration facility. Each of these cases was decided under Federal statutes which provides that acceptance of care in a Veterans Administration facility or hospital shall have the effect of an assignment to the United States. The *Grout* case (*supra*), was decided upon the authority of the *Bonner* and *McGhee* cases.

In the *Campbell* case (*supra*), the decedent was not a patient in a veterans hospital, so the Federal statutes applicable to the cases discussed in the preceding paragraph do not apply. The United States was claiming, as it does in this case, under subdivision (3) of section 450 of title 38 of the United States Code. The State of New York did not oppose the claim of the Federal Government, but the special guardian claimed that the burden of proving that the decedent left no heirs was upon the United States. The court relied on the *Bonner* case and adopted the theory of the Surrogate therein with respect to escheat. It must be remembered that the *Bonner* case involved a self-executing statute (U. S. Code, tit. 38, § 17) which was, in effect, an assignment of the funds to the United States. The court further points out that a distributee of a nonuser of a veteran's facility should be granted at least the same time to reclaim as is granted to a distributee of one who died in a veterans' hospital, although the statute involved in the *Campbell* case, and in the case at bar (U. S. Code, tit. 38, § 450), does not grant any such right. Furthermore, in the *Campbell* case,

more than five years had elapsed since the death of the decedent and no claim had been filed by a distributee.

In the *Price* case (199 Misc. 520, *supra*), the decedent was also a nonuser of a veteran's facility and the court awarded the net estate to the United States, relying on the *Campbell* (195 Misc. 520) and *Grout* (N. Y. L. J., Nov. 20, 1950, p. 1248, col. 7) cases (*supra*). It does not appear that the State of New York contested the claim of the Federal Government.

In all of these New York cases, the courts have said that the property of a person who dies intestate and without heirs escheats to the State by operation of law, citing section 10 of article I of the New York Constitution and section 200 of the Abandoned Property Law. Such is the language of those sections, and even though they refer specifically to real property, it has been said that there is no substantial difference between real and personal property in respect to escheat. (*Johnston* v. *Spicer*, 107 N. Y. 185; *Matter of Melrose Ave.*, 234 N. Y. 48, 235.) However, in this case the Attorney-General of the State of New York presents the argument, apparently for the first time, that under the specific statutes applicable to the facts herein, there is no escheat to the State of New York. If that be so, the claim of the United States to the funds in question must fail, for the Federal statute under which that claim is made (U. S. Code, tit. 38, § 450, subd. [3]), says that funds such as these, "which under the law of the State wherein the beneficiary had his last legal residence would escheat to the State, shall escheat to the United States". Consequently, the real question to be decided here is whether under the laws of the State of New York the funds in question do escheat to the State.

This requires an examination of the pertinent State statutes. As has already been pointed out, section 272 of the Surrogate's Court Act requires payment to the State Comptroller when the distributees are unknown. Under the provisions of paragraph (b) of subdivision 1 of section 600 of the Abandoned Property Law, such funds are deemed abandoned property. Subdivision 2 of section 602 of the Abandoned Property Law requires that such funds be paid to the State Comptroller. Subdivision 1 of section 95 of the State Finance Law creates a special fund known as the abandoned property fund, which shall include all moneys paid to the State Comptroller pursuant to the provisions of the Abandoned Property Law. This, of course, includes funds paid pursuant to section 272 of the Surrogate's Court Act. Subdivision 2 of section 95 of the State Finance

Law provides that when the abandoned property fund exceeds $750,000, the excess shall be paid into the State treasury to the credit of what was formerly the post-war reconstruction fund, now called the capital construction fund. (State Finance Law, § 93, subd. 1.) Moneys in that fund are available, upon appropriation pursuant to law, for the construction and reconstruction of State projects or improvements. (State Finance Law, § 93, subd. 2.) The State assumes the care and custody of all abandoned property paid to the State Comptroller, and is responsible for the payment of all claims established thereto pursuant to law, less any lawful deductions, which cannot be paid from the abandoned property fund. (Abandoned Property Law, § 1404, subd. 1.) Subdivision 3 of section 1406 of the Abandoned Property Law provides that claims for abandoned property heretofore paid to the State Comptroller pursuant to section 272 of the Surrogate's Court Act, or hereafter paid to him pursuant to paragraph (b) of subdivision 1 of section 600 of the Abandoned Property Law may be established only in accordance with section 272 of the Surrogate's Court Act. Finally section 102 of the Abandoned Property Law says, " It is hereby declared to be the policy of the state, while protecting the interest of the owners thereof, to utilize escheated lands and unclaimed property for the benefit of all the people of the state, and this chapter shall be liberally construed to accomplish such purpose."

The Attorney-General of the State of New York argues that under these statutory provisions the funds in question do not and never will escheat to the State. The United States Attorney, on the other hand, argues that " the purpose of Congress in passing Sec. 450 (3) was to regain control of federal funds which would otherwise escheat to the states." I agree that such was the Congressional purpose, but that does not answer the basic question as to whether there is an escheat under the New York statutes. The United States Attorney further argues that " There is an escheat under the New York Abandoned Property Law in this situation in fact and general legal principle if not in New York legislative label."

There is more involved in this problem than a mere matter of labels. It is true that the State of New York may have the benefit of the use of funds which ultimately find their way into the general construction fund, but that is all it gets. There is no time limit which bars a claim to recover money paid into the abandoned property fund (*Matter of New York Univ.*, 271 App. Div. 131, affd. 296 N. Y. 913; *Matter of Bonner*, 192 Misc.

753, *supra*), and the State is liable for the payment of all such claims which are established pursuant to law. (Abandoned Property Law, § 1404.) The United States Attorney has quoted from *Coakley* v. *Attorney General* (318 Mass. 508, 510), as follows: "It is of no importance that, as is contended, the reverter is not properly called an escheat * * * The will of Congress rises superior to the common law classification". It should be pointed out that the reverter referred to was a reverter to the United States, and that under the Massachusetts law involved in that case the realty and personalty of the decedent would escheat to the State. The court also said (p. 511), "The decisive thing is that the donor, the United States, has reserved the right to lay its hand upon the pension money or its proceeds in the very event that has happened." That event was an escheat to the State under its statutes. Consequently, this case does not solve the problem either.

It has frequently been said that "Escheat, now very generally regulated by statute, has come to signify a falling of decedent's estate into the general property of the State on his death, intestate, and without heirs" (*Matter of Clark,* 271 App. Div. 696, *supra*; 30 C. J. S., Escheat, § 19) and that "The state takes the title which the former owner had, with all the privileges and subject to all liens and encumbrances." (30 C. J. S., Escheat, § 19.) It has been held that upon the death of an owner of lands without heirs, such lands at once escheated to the State, and title thereto immediately vested in the State by operation of law. (*Smith* v. *Doe,* 111 N. Y. S. 525; *People* v. *Troupe,* 171 App. Div. 1; *Croner* v. *Cowdrey,* 139 N. Y. 471.) While these cases relate to real property, it is now settled that while personal property does not escheat in the original and technical sense of the term, the doctrine of escheat is, in effect, applied to personalty as well as to realty. (30 C. J. S., Escheat, § 3, subd. a; *Johnston* v. *Spicer,* 107 N. Y. 185, *supra*; *Matter of Melrose Ave.,* 234 N. Y. 48, *supra*.) It seems clear, therefore, that title must pass to the State to constitute an escheat. This title theory is recognized in the *Melrose Ave.* case, and even in the *Lindquist, Clark, Kelly* and *Bonner* cases (*supra*) cited in support of the contention of the United States.

The intent of the New York Legislature in enacting the Abandoned Property Law may be gathered from a joint statement of the sponsors thereof, which said in part, "We believe that it is sound public policy for the state to take over and use for the benefit of all the people of the state property the ownership of which is unknown or at least as to which there has been no

claim made, while at the same time protecting the right of the owner to such property. * * * This principle is written clearly into the statute. It marks a change from many existing provisions of law which escheat such property to the state and wipe out the rights of the owner of such property after a specified period of time." (See historical note, Abandoned Property Law, § 102.) Thus it appears that it was not the intention of the sponsors of this legislation that title to such property should be transferred to the State of New York.

It has been held that a statute providing for the payment to the State Comptroller of legacies or distributive shares, the owners of which are unknown, does not involve the assertion by the State of title thereto, where the payment is required to be made for the benefit of those who may thereafter appear to be entitled thereto. (*Matter of Germaine,* 244 App. Div. 374, revd. on other grounds, 268 N. Y. 475.) Such are the provisions of the State statutes under consideration in this case.

Since under the applicable New York law, title to the funds of this decedent does not pass to the State, and since the State is obligated to return the funds at any time upon the establishment of a claim thereto pursuant to law, I hold that there is no escheat of these funds to the State of New York, in which the decedent had his last legal residence, and that under the provisions of subdivision (3) of section 450 of title 38 of the United States Code, there can be no escheat of such funds to the United States. The net estate must, therefore, be paid to the Comptroller of the State of New York, to be held by him for the benefit of the person or persons who may thereafter appear to be entitled thereto in accordance with the provisions of section 272 of the Surrogate's Court Act.

Submit decree on notice.